[No. 17147. *En Banc.* May 3, 1923.]

# Sarah O. Andrews, *Appellant*, v. Daniel Kelleher, *as Executor etc., et al., Respondents.*[1]

Wills (86) — Construction — Intent of Testator — Separate Property—Election by Widow. The terms of a will so plainly evidence testator's intention to dispose of all the property as his separate property as to require the widow to elect whether she will take under the will or claim under the law her interest in it as community property, where it recites that all the property is his separate property, acquired before marriage, or the natural increase thereof, in view of which he makes certain bequests, one-third of all being to his wife.

Same (86)—Election by Widow—What Constitutes. The wife's acts constitute an election to take under such a will, where she accepted bequests of specific property which were unquestionably the testator's separate property, and acquiesced in the distribution of the net income of the whole estate under the terms of the will, and in the payment of inheritance taxes on the basis of its being the testator's separate property.

Gifts (1, 4, 12)—Requisites—Delivery—Evidence—Sufficiency. The evidence sustains findings that a testator received as a gift certain shares of stock in a timber company and made a gift of them to his minor children during his lifetime, having assigned and delivered the certificates to trustees for his children, who at all times held possession for their exclusive use and benefit.

Executors and Administrators (75, 81) — Claims — Presentation—Verification—Sufficiency. The verification of a contingent claim against an estate need not state that "the amount is justly due" as required by Rem. Comp. Stat., § 1478, but is sufficient if it complies with such section so far as it is truthfully possible; since the claim must be filed before it is due.

Same (75, 81-1)—Claims—Presentation—Authority to Present Claim. A contingent claim against an estate, upon the decedent's guaranty of certain bonds payable at the office of a trust company, may be presented by the trust company, although it does not own the bonds, where it had authority to act for the bondholders, and "to institute foreclosure proceedings or take any legal action to collect" the bonds.

Same (42-1)—Management of Estate—Powers of Executor—Contracts. The executor of a non-intervention will did not exceed

[1]Reported in 214 Pac. 1056.

his authority in guaranteeing the payment of refunding bonds, substituting liability of the estate in place of testator's guaranty of the original bonds, where it was done to procure an extension of time for the final satisfaction of the original obligation, resulting in greatly decreasing, and probably ultimately freeing the estate from, the original obligation.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 28, 1921, upon findings in favor of the defendants, dismissing an action for equitable relief, tried to the court. Affirmed.

*Tucker & Hyland (Ford Q. Elvidge* and *Mary H. Alvord,* of counsel), for appellant.

*Bausman, Oldham, Bullitt & Eggerman, Walter L. Nossaman,* and *Hastings & Stedman,* for respondents.

PARKER, J.—The plaintiff, Sarah O. Andrews, commenced this suit in equity in the superior court for King county, seeking a decree, (1) adjudicating all of the property in which her deceased husband had any interest at the time of his decease to be their community property, to the end that she be awarded her portion thereof accordingly; (2) adjudicating 1,145 shares of the capital stock of the Riverside Timber Company, not inventoried as a portion of the estate, to be such community property and a portion of the estate; which shares of stock are claimed by the defendants to have been the separate property of the deceased and by him given to his and Mrs. Andrews' children before his decease; (3) adjudicating a contingent claim of the Detroit Trust Company, which has been filed with and allowed by the executor against the estate, to be invalid and of no force as an indebtedness of the estate, contingent or otherwise; and (4) for other claimed relief, principally by way of accounting, with which we are not concerned upon this appeal, no

contention being here made with reference thereto. The complaint of Mrs. Andrews being answered upon the merits by all of the defendants jointly; to wit, by Mr. Kelleher as executor, as guardian for the minor daughter, and as trustee for both of the children under the will of the deceased; by the son; and by the Detroit Trust Company, which answer was replied to upon the merits by Mrs. Andrews, the cause proceeded to trial, all parties submitting the several matters so brought into controversy to the court for final decision upon the merits. At the conclusion of the trial, the court rendered its judgment and decree upon the merits, denying the relief prayed for and dismissing the suit with prejudice. From this disposition of the cause, Mrs. Andrews has appealed to this court.

Mr. and Mrs. Andrews were married in the year 1901; he was the older by about fifteen years. They lived in Seattle for many years prior to his decease, which occurred there on August 24, 1914. At the time of their marriage, Mr. Andrews had inherited and accumulated property of the value of from $50,000 to $75,000, which was then his separate property. Following his death, all of the property in which he had any interest, as claimed by Mr. Kelleher, his executor, was inventoried as his separate property, and the value thereof appraised at $238,000.

On September 15, 1908, Mr. Andrews made and executed his last will and testament, which, after providing for the return to his brother and three sisters of certain properties and monies he held in trust for them for the purpose of investment in their behalf, as to which there is no question in this controversy, reads as follows:

"Third: To my wife, Sarah O. Andrews, I give all my household goods, silver and personal effects contained in our residence.

"Fourth: All the property that I now hold is separate property. The same was all acquired by me before marriage or is the natural increase, from rents and profits, of such investments and property as held before my marriage. Inasmuch as all my property is separate property, as aforesaid, after the payment of my just debts (and the bequests above-mentioned) I give, devise and bequeath one-third of all my property, real, personal and mixed, to my wife, Sarah O. Andrews. In like manner I give, devise and bequeath the remaining two-thirds of my property to my brother, James H. Andrews and my friend, Daniel Kelleher, as trustees, to hold in trust in the following manner, share and share alike for the benefit of my son Edward W. Andrews, Jr., and my daughter Mary De Harte Andrews. The one-third of my property so to be held in trust for the benefit of my son Edward W. Andrews, Jr., is to be held by my said trustees until he becomes twenty-five (25) years of age, at which time said one-third of my estate is to be turned over absolutely to my son, Edward W. Andrews, Jr. The remaining one-third of my estate to be held by my said trustees for the benefit of my said daughter until she becomes twenty-one years of age, when said one-third of my estate is to be turned over to her and become hers absolutely. While said property is held in trust for my son and daughter, the trustees shall turn over to said son and daughter the income of the same, or such amount as in their opinion is proper for the maintenance and education of my said son and daughter, and if in their opinion, any part of the principal of said estate so to be held in trust for my son and daughter should be used for their education and maintenance, then they shall have authority to turn over such part of said principal for such uses as to them seems just.

"Fifth: I hereby appoint my brother, James H. Andrews, and my friend, Daniel Kelleher, the executors of this my last will and testament.

"Sixth: I give my said executors, or such of them as may qualify as such, full authority to sell, convey and otherwise dispose of all my property of every nature and description, for the uses and purposes above

mentioned, without the authority and without the approval of any Court, and without the necessity of having any order approving their said doings. I give my said trustees full power and authority to sell, mortgage, or otherwise convey any and all property so to be held in trust by them, with authority to reinvest the same in such manner as to my said trustees seems just and most beneficial. I direct that no bond be required of my said executors or my said trustees.

"Seventh: I direct that my said estate be settled without the intervention of a probate court, further than to have this will admitted to probate, it being my desire to have my estate settled in the manner provided for- herein without the intervention of the probate or any other court."

On May 1, 1914, the Riverside Timber Company, a Washington corporation, the capital stock of which was owned by Edward W. Andrews, the minor children of Mr. and Mrs. Andrews, Lewis Schwager, W. B. Nettleton and Daniel Kelleher, executed 500 interest bearing, negotiable bonds for the principal sum of $1,000 each; the bonds numbered 1 to 25 inclusive being payable May 1, 1916, and the bonds of each succeeding 25 numbers being payable at the end of each succeeding six months' period, the last twenty-five numbered bonds being payable on November 1, 1925, to bearer, or, if registered with the Detroit Trust Company as therein provided, to the registered holder thereof. On the same day, to secure the payment of the bonds and the interest thereon, the Riverside Timber Company executed and delivered to the Detroit Trust Company, as trustee for the bondholders, a mortgage upon some 20,000 acres of timber land owned by the timber company, situated in Kitsap and Mason counties in this state. To further secure the payment of the bonds, on the same day Andrews, Schwager, Nettleton and Kel-

leher indorsed their joint and several guaranty upon each of the bonds, agreeing that:

"We shall in no respect and to no extent be released from the obligation of this guaranty by any act or proceeding taken or performed under or in pursuance of any of the terms or provisions of the collateral mortgage or deed of trust referred to in the within bond, or by any extention of the time of payment of any bond or bonds or coupons secured by said mortgage or deed of trust."

Mr. Andrews having died on August 24, 1914, his will was soon thereafter duly admitted to probate in the superior court for King county, and thereupon Mr. Kelleher became the duly qualified and acting sole executor thereof and has so remained ever since. The deceased's brother, James H. Andrews, never qualified as executor, evidently because he has at all times been a nonresident of this state. Soon after the probate of this will, Mr. Kelleher caused to be prepared and filed in the superior court where the will had been probated, an inventory and appraisement of the property of the estate, claiming it all to be the separate property of Mr. Andrews; the property so inventoried and appraised being valued at $238,000. This inventory did not include the 1,145 shares of the capital stock of the Riverside Timber Company now claimed by Mrs. Andrews to be a portion of the estate, which shares of stock were given to the children by Mr. Andrews as his separate property, as is claimed by Mr. Kelleher, as executor of the estate and trustee for the children under the will.

On February 10, 1915, the Detroit Trust Company, as trustee in behalf of the bondholders, presented to and filed with Mr. Kelleher, as executor of the estate, its contingent claim for the amount to become due upon the $500,000 indebtedness evidenced by the bonds

and the mortgage, none of the bonds being then due;
its claim being rested upon the guaranty of Mr. An-
drews and his associates indorsed upon the bonds,
which claim was thereafter allowed by the executor
as a contingent claim and such allowance indorsed
thereon. Thereafter negotiations were entered into be-
tween the Riverside Timber Company, the guarantors,
the executor representing the estate of Edward W.
Andrews, deceased, and the Detroit Trust Company,
looking to an extention of the time for the maturing
of the indebtedness evidenced by the bonds and the
mortgage executed May 1, 1914, with a view of enabl-
ing the timber company to more certainly pay the
indebtedness, and in the meantime not embarrass
the estate of Edward W. Andrews, and quite probably
ultimately entirely free the estate from the obligation
of the guaranty without any loss to it. This course
was prompted by all concerned, evidently because of
the then unsatisfactory condition of the timber and
lumber market and the prospect of improvement in
that behalf in the not distant future. These negotia-
tions resulted in the execution on May 1, 1917, by the
Riverside Timber Company, of a new series of bonds
of the same number, denomination and amount, and a
new mortgage upon the same property securing them,
to replace the first series of bonds and the first mort-
gage executed May 1, 1914; which new bonds were in
all respects the same in terms as the first bonds, ex-
cept that the maturity of each new bond was specified
to occur three years later than each of the first bonds,
making the maturity of the last twenty-five of the new
bonds to occur on November 1, 1928. While Schwager,
Nettleton and Kelleher personally ·indorsed their
guaranty on each of the new bonds, in terms the same
as they had indorsed their guaranty upon the first

bonds, Mr. Andrews having died, it was agreed that, instead of his estate's guaranty being indorsed upon the new bonds, Mr. Kelleher, as the executor, should evidence the continued guaranty by the estate of the indebtedness so newly evidenced, by a separate writing to be executed and delivered by him to the Detroit Trust Company. This was accordingly done, which writing so signed by Mr. Kelleher, as executor of the estate of E. W. Andrews, reads as follows:

"Whereas, E. W. Andrews, now deceased, was guarantor of bonds of the Riverside Timber Company to the Detroit Trust Company in the sum of $500,000, dated May 1, 1914, and whereas, said Detroit Trust Company filed their claim against the estate of said E. W. Andrews, deceased, for $500,000 on account of said guaranty, which said claim I have allowed; and whereas, W. B. Nettleton and Lewis Schwager are liable also as guarantors of said bonds, and whereas, said estate and said W. B. Nettleton and Lewis Schwager and said Riverside Timber Company are desirous of refunding said bonds; and whereas, said Detroit Trust Company are willing to refund said bonds by issuing a new issue thereof, dated May 1, 1917, provided said estate remains liable as guarantor of said bonds, and provided said estate will guarantee the payment of said bonds and will continue to remain liable on said bonds as guarantor, and provided they will lose nothing on said claim against said estate; and whereas said W. B. Nettleton and Lewis Schwager are willing to guarantee payment of said refunding bonds, provided said estate remains liable on said refunding bonds and that said estate shall be a guarantor of said refunding bonds to the same purpose and effect as if said original bonds were not refunded; and whereas it is for the benefit of said estate that said bonds be refunded:

"Now Therefore, I, Daniel Kelleher, as Executor of the estate of E. W. Andrews, do hereby agree that the estate of E. W. Andrews shall remain bound on said claim of $500,000, against said estate until the $500,000

of refunding bonds to be dated May 1, 1917, and to be issued to refund said old bonds, shall be paid in full; and as executor of said estate I hereby guarantee the payment of said refunding bonds and agree that said claim against said estate will not be affected in any way by the issue of said refunding bonds or the surrendering of said old bonds, but that said Detroit Trust Company shall maintain their claim against said estate until said refunding bonds are paid in full.

"And I further agree that until said refunding bonds are paid in full there shall be no distribution of the estate of E. W. Andrews, now in Probate, but the same shall remain undistributed, the same as it would have to be if said old bonds were not surrendered, and the same as it would be if said refunding bonds were not issued to refund said old bonds. It is understood, however, that I may distribute to the wife and two children of said estate of said deceased E. W. Andrews the net income of said estate."

It is worthy of particular notice that, by the concluding words of this guaranty, Mr. Kelleher has reserved the right as executor to distribute the net income of the estate to the widow and children of Mr. Andrews, which it seems highly probable he could have been prevented from doing, in view of the amount of the trust company's claim as compared with the value of the estate. Since the execution of this new series of bonds, the indebtedness evidenced thereby has been, by the Riverside Timber Company and the corporation with which it has become consolidated, reduced from $500,000 to $375,000; the guarantors, including the estate of Edward W. Andrews, being to that extent released from the obligation of the guaranty without any loss to any of them, and there is fair prospect that the whole of the indebtedness evidenced by the bonds will ultimately be paid by the Riverside Timber Company and the corporation with which it has become consolidated, without loss to any of the guar-

antors.  Other facts will be noticed as may become necessary in our discussion of the several contentions of counsel here made.

The trial court did not directly decide the question as to whether or not the property which was inventoried and appraised as the separate property of Mr. Andrews was, at the time of his death, in fact his separate property; but disposed of that question against the contention of Mrs. Andrews, in effect, by deciding that she is now estopped from claiming the property to be otherwise than Mr. Andrews' separate property at the time of his death, by her election to take under the will rather than as the law might award her a community interest in that property in the absence of a will made by her deceased husband.

We first inquire as to whether or not the terms of the will so plainly evidence the intention of Mr. Andrews to claim and dispose of all of the property as his separate property as to require her to elect as to whether she would take under the will or under the law.  We have seen that Mr. Andrews declared and provided in his will as follows:

"All the property that I now hold is separate property.  The same was all acquired by me before marriage or is the natural increase, from rents and profits, of such investments and property as held before my marriage.  Inasmuch as all my property is separate property, as aforesaid, after the payment of my just debts (and the bequests above-mentioned) I give .  . ." followed by gifts of one-third of all such property to his wife and one-third each to their children.

This declaration of Mr. Andrews, read in the light of the provisions of his will, we think is in substance equal to a declaration that the community composed of himself and Mrs. Andrews was not possessed of any

community property, and that all of the property in which he had any interest was wholly his separate property. We think that Mr. Andrews intended, by this declaration and disposition of his property, to express his belief that all of the property in which he had any interest whatever was his separate property, and his intent to dispose of it as such.

We had occasion to review the question of election by a widow in our decision in *Herrick v. Miller,* 69 Wash. 456, 125 Pac. 974, and, while it was there held that no election was required by the widow under the terms of the will there involved, because of the want of a clearly expressed intent of the testator husband to dispose of the whole of the property in which he had only a community interest, the reasoning of that decision and the authorities therein noticed, we think, lend strong support to the view that this will does express such an intention on the part of Mr. Andrews, not only to dispose of all of the property as his separate property, but also accompanied by the expressed conviction on his part that it was in fact his separate property, and has the effect of requiring Mrs. Andrews to take the property specifically bequeathed to her and the one-third of the remainder of the property bequeathed to her, and forego any claim she may have in the property as community property; or elect to assert her claim of interest in the property as community property and forego any claim of right to any portion of it under the will. This problem, as we view it, is one of the construction of the will, to wit, the ascertaining of Mr. Andrews' intention. In 1 Pomeroy's Equity Jurisprudence (3d ed.), § 472, while the rule is recognized that it must clearly appear upon the face of the will that the testator intends to dispose of property wholly as his own, before a devisee or legatee will be put to an

election to take under the will or independent thereof, that learned author says:

"It is sufficient if the dispositions of the instrument, fairly and reasonably interpreted, exhibit a clear intention of the donor to bestow upon B some estate, interest, or right of property, which is not the donor's, but which belongs to A, and at the same time to give to A some benefits derived from the donor's own property. It is immaterial, however, whether the donor knew the property not to be his own, or erroneously conceived it to be his own; for in either case, if the intention to dispose of it clearly appears, the necessity for an election exists."

See, also, 28 R. C. L. 328; 40 Cyc. 1959.

We conclude, therefore, that Mrs. Andrews was bound to elect as to whether she would take under the will or independent of the will.

Was an election made by Mrs. Andrews which now estops her from claiming any interest in the property of the estate other than the portion thereof devised to her by the will? We have seen that she was bequeathed, using the language of Mr. Andrews in the will, "all my household goods, silver and personal effects contained in our residence." The value of this property we think the evidence shows to have been worth at least $5,000, and probably as much as $10,000. This specifically devised property contained several valuable items or pieces, each of large value, which were beyond question the separate property of Mr. Andrews; they having been acquired by him, some before his marriage and others by gift thereafter. Touching the facts tending to show Mrs. Andrews' election to take under the will, the trial court found, in part, as follows:

"That immediately after defendant Kelleher's appointment as executor of the estate of Edward W. Andrews on September 2, 1914, defendants Kelleher

and James H. Andrews fully explained the terms and conditions of the will to the plaintiff, who was then advised of her rights thereunder and that said will set forth that all of said property left by said Edward W. Andrews was his separate estate;  .  .  .   In accordance with the third provision of said will, immediately after the probate thereof, the executor Kelleher distributed to the plaintiff all of said household goods, silver, and personal effects, many of which were personal family heirlooms of the deceased Andrews, all of which plaintiff accepted under said will as her special bequest, and which household goods, silver and personal effects were of large value.  That after plaintiff accepted said household goods, silver, and personal effects, the plaintiff sold and disposed of some of them as her own and as belonging to her under the special bequest in the will.

"In August, 1917, plaintiff consulted and was advised by independent counsel and an attorney at law as to her legal rights under the will and in the estate of Edward W. Andrews, and after such consultation and advice by attorney, the plaintiff expressed to defendant Kelleher her satisfaction with the terms of the will and her willingness to abide thereby, and thereafter said Kelleher, as such executor, paid to the Treasurer of the State of Washington, $1,488.38, as the inheritance tax due the State of Washington, on the basis that all of the property of said estate was the separate property of Edward W. Andrews.  If said property had been appraised as community property, the inheritance tax would have been approximately one-half of that amount.  From the time that said will was probated down to the commencement of this suit, the plaintiff, though she well knew that the will purported to devise and bequeath all of the property of said decedent as the separate property of said Edward W. Andrews, and though she well knew that said executor was probating all of the property of said estate as the separate property of Edward W. Andrews, yet she never made any objection to the same, but on the contrary approved and ratified the same in every manner, and at all times until this suit was started allowed

the executor to treat the property, without any objection on her part, as the separate property of Edward W. Andrews.''

We think these findings are well supported by the evidence. We may add that the evidence further shows to our satisfaction, though no specific finding was made by the trial court with reference thereto, that Mr. Kelleher, as executor, distributed from time to time practically the whole of the net income of the property, other than that specifically bequeathed to Mrs. Andrews, to her and to the son and daughter in equal portions; that is, one-third thereof directly to her; one-third thereof to himself as trustee for the son during his minority and directly to the son thereafter; and one-third thereof to himself as trustee for the daughter, she still being a minor; which distribution of the income so made to the son and daughter was expended towards each of their maintenance or educations. All of this was done with the knowledge of, and without objection from, Mrs. Andrews during the period of some five years prior to the commencement of this suit, as well as thereafter.

We conclude that the acceptance by Mrs. Andrews of the specific property bequeathed to her under the terms of the will, her acquiescence in the distribution of the net income of the property to herself and to the children, and her actions inducing the payment of the inheritance tax by Mr. Kelleher, as trustee, upon the basis of all of the property being separate property, constitute an election upon her part to take under the will, and estop her from now claiming any interest in the property disposed of by the will other than under the terms of the will. Without reviewing the authorities touching the question of her election, we deem it sufficient to cite as lending strong support to the con-

clusion we reach, the following: *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255; *In re Goss' Estate,* 73 Wash. 330, 132 Pac. 409; *In re Parks' Estate,* 101 Wash. 659, 172 Pac. 908; 28 R. C. L. 329; 40 Cyc. 1979-1982.

Our decision in *In re Curtis' Estate,* 116 Wash. 237, 199 Pac. 309, is cited in support of the suggestion that Mrs. Andrews was, in any event, not required to elect until there should be attempted to be made a final distribution of the estate by the executor. We are to remember, however, that this is a nonintervention will and that the executor derived from the terms of the will itself power of settlement and distribution, which he partially did in the immediate giving to Mrs. Andrews of the household goods, silver, and personal effects, and the one-third periodical net income of the other bequeathed property; so that, while in the ordinary settlement and distribution of an estate, other than under a nonintervention will, the widow or other legatee provided for therein might not be required to elect until final distribution, the conditions here shown were such that she had the opportunity to elect, and did elect, to take under the will. Observations made by the supreme court of California in *In re Smith,* 108 Cal. 115, 40 Pac. 1037, support this conclusion.

Do the 1,145 shares of the capital stock of the Riverside Timber Company, or the shares of the capital stock taking their place, of the corporation with which that company has been consolidated, belong to the estate of Edward W. Andrews, deceased, and should it be so adjudicated in this action? We think not. This, as we view it, involves only questions of fact, touching which the trial court found as follows:

"In March, 1903, Edward W. Andrews received as a gift 1,450 shares of the capital stock of the Riverside Timber Company which thereupon became and remained at all times since his separate property. In

May, 1913, during his lifetime, Edward W. Andrews gave to his children, Edward W. Andrews, Jr., and Mary De Hart Andrews, 1,145 shares of the capital stock of said Riverside Timber Company, at which time, said children being minors, in order to facilitate the gift to his aforesaid children, said Andrews duly assigned and delivered to Daniel Kelleher and James H. Andrews, as trustees, certificates of stock representing said 1,145 shares of said stock, in trust for said children of Edward W. Andrews, share and share alike. At all times since said last mentioned date, defendants Kelleher and Andrews as such trustees have held and now hold said 1,145 shares of stock for the exclusive use and benefit of said children, . . ."

We think the evidence fully sustains these findings. That evidence is almost wholly oral, and we deem it sufficient for present purposes to say that our careful review of it convinces us that the trial court was fully justified in so finding the facts with reference to the gifts, both to Mr. Andrews and thereafter by him to their children. We conclude that those shares of stock became the separate property of Mr. Andrews upon him so receiving them, and that he thereafter gave them to his children, and that they were therefore no part of the property of his estate at the time of his decease.

Was the Detroit Trust Company's claim properly allowed by Mr. Kelleher, as executor, as a contingent claim against the estate? It is first contended that the claim was not properly allowable by the executor because it was not properly verified by oath as being "justly due", as required by § 1473, Rem. Code, relating generally to the verification and presentation of claims against estates, and as later amended by the probate code of 1917; § 1478, Rem. Comp. Stat. This claim so verified and presented by the president of the Detroit Trust Company contains recitals of fact upon

which it was rested, referring to the bonds and mortgage, sufficient to show that it was a valid, contingent claim against the estate of Edward W. Andrews. It is to be noted that the claim was verified and so presented on February 10, 1915, before the maturing of any of the first issue of bonds guaranteed by Mr. Andrews and his associates, the first twenty-five of those bonds not maturing until May 1, 1916. So it is plain that, since none of the bonds so guaranteed by Mr. Andrews and his associates matured until after the presentation of the claim, and after the year for the presentation of claims against the estate would expire (see § 1472, Rem. Code, the law then in force), it was, of course, impossible that the claim be truthfully verified in the very language of the general statute relating to the verification of claims, to wit, that "the amount is justly due."

In support of this contention made by counsel for Mrs. Andrews, our decision in *Dillabough v. Brady,* 115 Wash. 76, 196 Pac. 627, is cited and relied upon. That decision, however, manifestly does not deal with the question of the proper verification of contingent claims. Section 1573, Rem. Code, in force at the time, as does also the 1917 probate code; §§ 1547-1549, Rem. Comp. Stat., clearly recognized the validity of contingent claims of the nature of this one becoming proper charges against estates of decedents. We think that, viewed as such a claim, which it manifestly was at the time of its presentation, it did not fail of proper verification because of a want of a statement in the verification that "the amount is justly due," and that the verification as made was sufficient as long as it complied with § 1473, Rem. Code, in so far as it was truthfully possible to comply with that section. That a contingent claim of this nature, in order to become

established as a claim against an estate, must be verified and presented within the time prescribed by the statute, to wit, one year, as the law was then existing, in order to become an established claim against the estate, was held by this court in *Barto v. Stewart*, 21 Wash. 605, 59 Pac. 480, in which decision observations are made clearly indicating the view of the court that it was not necessary that such verification state as to such a claim that "the amount is justly due."

It is further contended with reference to the claim of the Detroit Trust Company that it was not presented by the proper party, in view of the fact that it does not show upon its face that the Detroit Trust Company was then the owner of the bonds which form the basis of the claim, and since it appears in the record that the bonds were in fact held by numerous other persons. It is not seriously contended, and indeed we think there is no room therefor, that the Detroit Trust Company, by the terms of the bonds and the trust mortgage given to it to secure them, would not be the proper party to prosecute a suit foreclosing the mortgage looking to the payment of the bonds from the proceeds of such foreclosure. But the argument is that the trust company is not authorized by the terms of the mortgage or the bonds to institute a suit or proceeding, or to take any steps looking to the enforcement of any personal liability evidenced by the bonds, against either the Riverside Timber Company, the principal debtor, the guarantors or their estates. This, to our mind, presents only a question of agency authority on the part of the Detroit Trust Company acting for and on behalf of the bondholders, to be determined in the light of its trust duties or authority. In the body of the bonds there is reference to the Detroit Trust Company as the trustee and to its duties and

authority as such trustee, as specified in the mortgage, in this language:

"To which mortgage or deed of trust reference is hereby made for a description of the property, the nature and extent of the security, the rights of the holders of the bonds under the same and the terms and conditions under which the bonds are issued and secured."

We also note that both the principal and the interest of the bonds are payable at the office of the Detroit Trust Company. In the body of the mortgage there are many references to the duties and authority of the trust company, suggesting the thought that the Detroit Trust Company is authorized to act for the bondholders, not only in the ultimate foreclosure of the mortgage, should that become necessary, but also for them in the securing of their rights by enforcing the personal obligation of the Riverside Timber Company, the principal debtor, and the guarantors or their estates. It is sufficient, we think, for present purposes to quote one clause from the mortgage showing such duty or authority on the part of the Detroit Trust Company, which is, "The trustee . . . may institute foreclosure proceedings or take other legal action to collect the amount of such bonds and coupons with interest." Without deciding as to whether or not the Detroit Trust Company was, in strict legal duty, bound to present this contingent claim to the executor of the estate of Mr. Andrews, or as to what liability it might incur to the bondholders for failure to do so, we may say that we are, in any event, of the opinion that the Detroit Trust Company was fully authorized to present such claim as it did, and that by doing so, and by its allowance by the executor, there became thereby established a valid, contingent claim against the estate in favor of the Detroit Trust Company, as trustee for

the benefit of the bondholders, to the same extent as a proper, timely verification and presentation of a past due, liquidated claim could be so established.

Some contention is made in behalf of Mrs. Andrews with a view of having this claim of the Detroit Trust Company, as trustee, cancelled and rendered of no effect as a claim against the estate, rested upon the theory that the executor had no power to enter into a new contract of guaranty, which he did, in terms, binding the estate in substance as it was bound by the original guaranty upon the first series of bonds. This question, we think, is of little or no moment at the present time. We think, at all events, that, if the authority of the executor was exceeded in that behalf, his authority was exceeded only in form. However, we are of the opinion that the executor did not exceed his authority, in view of his being the executor of a nonintervention will, and of the fact that whatever he did was nothing more or less than a change of the form of the obligation with a view of procuring an extension of time for the final satisfaction of the obligation incurred by the guaranty, looking to the probable entire satisfaction of the debt evidenced by the bonds, by the Riverside Timber Company, the principal debtor, and the ultimate freeing of the estate of Edward W. Andrews of all obligation to contribute toward the satisfaction of that debt, which has already been reduced by the Riverside Timber Company from $500,000 to $375,000, with a strong probability of it being ultimately satisfied by the Riverside Timber Company, and thus entirely freeing the estate of all liability.

The decree dismissing the action with prejudice is affirmed.

MAIN, C. J., FULLERTON, BRIDGES, MACKINTOSH, MITCHELL, and PEMBERTON, JJ., concur.