[Nos. 27575, 27576. Department Two. January 22, 1940.]

*In the Matter of the Estate of* ANNA BALE WOOD, *Deceased.*

ALICE K. ENGLISH *et al., Appellants,* v. YORKSHIRE & CANADIAN TRUST, LTD., *et al., Respondents.*

*In the Matter of the Estate of* FREDERICK JOHN WOOD, *Deceased.*

ALICE K. ENGLISH *et al., Appellants,* v. YORKSHIRE & CANADIAN TRUST, LTD., *et al., Respondents.*[1]

[1]Reported in 97 P. (2d) 1088.

*Evans, McLaren & Lane,* for appellants.

*McMicken, Rupp & Schweppe* and *J. Gordon Gose,* for respondent Yorkshire & Canadian Trust, Ltd.

BEALS, J.—Frederick J. and Anna Bale Wood were for many years husband and wife, and residents of Bellingham, Washington. Edward G. and Alice K. English were husband and wife, residents of Seattle. Each marital community owned a half interest in Wood & English, Ltd., a Canadian corporation, which owned property, real and personal, of considerable value, most, if not all, in Canada.

During the year 1924, the corporation, desiring to borrow money for its corporate purposes, issued bonds in the aggregate amount of one million dollars, securing the same by a mortgage deed of trust to Yorkshire & Canadian Trust, Ltd., a corporation organized and existing under the laws of the Dominion of Canada, as trustee. The trust deed conveyed considerable British Columbia land, chiefly valuable for its timber,

together with timber rights. Mr. and Mrs. Wood and Mr. and Mrs. English signed the bonds and the trust deed, as comakers with the corporation.

Edward G. English died February 23, 1930; Anna Bale Wood died May 11, 1930; and Frederick J. Wood died June 22, 1937. Mrs. English is living. At the time of Mrs. Wood's death, there were still outstanding and unpaid bonds in the principal sum of $704,900, which at that time were not in default. No bonds have been paid since that time, the last interest thereon having been paid during the month of November, 1931. The corporation is in the hands of a receiver. No action has been brought for the purpose of foreclosing the trust deed.

Proceedings were regularly instituted in King and Whatcom counties for the probate of the estates of Mr. English and of Mr. and Mrs. Wood. Within the time limited by law for the presentation of claims, Yorkshire & Canadian Trust, Ltd. (hereinafter referred to as the trustee), served and filed in the Anna Bale Wood estate its verified claim based upon the indebtedness secured by the deed of trust. Within the times, respectively, limited by law, similar claims were filed by the trustee in the estates of Edward G. English and Frederick J. Wood. Each claim was filed for the entire amount of the indebtedness represented by the outstanding bonds, with interest, and each claim is based upon the agreement of the deceased person in whose estate the claim was filed to pay the indebtedness evidenced by the bonds, without reference to the security.

Other claims in large amounts were filed against the three estates, respectively, and the estates of Anna Bale Wood and Frederick J. Wood filed claims against the estate of Edward G. English, based upon alleged rights for contribution if the Wood estates should be required

to pay any obligations upon which Edward G. English was jointly liable; and the estate of Edward G. English, and Alice K. English, personally, filed in the Wood estates similar claims for contributions in favor of the English estate, and in favor of Mrs. English. Substantial payments were made both by the Wood and English interests upon indebtedness upon which both were liable. Apparently, all three estates were insolvent, each estate, however, being possessed of valuable assets.

October 18, 1937, Charles L. Sefrit, as administrator with the will annexed of the estate of Anna Bale Wood, filed his first report as administrator, filing a second report July 8, 1938. In these reports, the administrator requested that all claims, except one with which we are not concerned, which had been filed against the estate, be allowed, this including the claim by the trustee. July 8, 1938, Warren B. Wood and Charles L. Sefrit, as executors of the will of Frederick J. Wood, deceased, filed in that estate a report in which they asked that claims filed in that estate, including the claim of the trustee, be allowed. The executors of the last will of Edward G. English filed exceptions to the respective reports filed in the Wood estates, as above set forth, and Mrs. English also filed appearances in the proceedings. The exceptions in the two estates were consolidated for hearing, and after a trial, the claims of Alice K. English and of the estate of Edward G. English were allowed against each of the Wood estates, objections interposed by the representatives of Mrs. English and the English estate to the allowance of the claims of the trustee being overruled. These objections were based upon the ground that, under the bonds and the mortgage deed of trust, the trustee had no right or authority to file a claim. An order was entered in each estate, allowing the respec-

tive claims for the full amount of the indebtedness therein set forth, and from these orders Mrs. English and the executors of the estate of Edward G. English have appealed. The appeals have been consolidated for hearing before this court.

Error is assigned upon the ruling of the trial court holding that the trustee, and not the individual bondholders, was a proper party to file the claims, and upon the orders of the trial court allowing the claims from which this appeal has been taken. Appellants contended before the trial court, and contend here, that, under the deed of trust, the trustee has no power or right to file the claims, but that such right is vested only in the bondholders.

Appellants filed a claim in each of the Wood estates, and these claims, contingent in their nature, were allowed by the trial court. Appellants, then, evidently as established creditors of the Wood estates, contested in the probate proceedings the allowance of the claims filed by the trustee. As creditors of the Wood estates, their right to contest the allowance of these claims appears to have been conceded.

The trustee, the Royal Bank of Canada, and other persons, including the administrators of the respective Wood estates, are named herein as respondents, but no respondent has appeared save Yorkshire & Canadian Trust, Ltd., the trustee, which will be referred to herein as though it were the sole party respondent.

Only one question is presented by the appeals, to-wit, whether or not the trustee, under its mortgage deed of trust, has authority to file in each of the Wood estates a claim based upon the amount due upon the unpaid bonds and secured by the trust deed.

The bonds contain a paragraph as follows:

"The payment of said bonds and the interest thereon is equally secured by and said bonds are issued under a First Mortgage and Deed of Trust of even date herewith, executed and delivered by the Company, Wood and English, Limited, Edward George English, Alice Kessinger English, Frederick John Wood and Anna Bale Wood, to The Yorkshire & Canadian Trust, Limited, Trustee (hereinafter called the Trustee), and collaterally secured by assignment to and deposit of certain timber licenses with said Trustee and conveyance and transfer to said Trustee of certain other assets of the Company, to which First Mortgage and Deed of Trust, assignments, transfers and conveyances reference is hereby made for a description of the property mortgaged, assigned or conveyed, the nature and extent of the security, the rights of the holders of the bonds under same, and the terms and conditions upon which said bonds are issued and secured."

In the indenture to which we refer as the trust deed, Wood & English, Ltd., a corporation, Mr. and Mrs. English, and Mr. and Mrs. Wood are first parties, and respondent is second party. The instrument is of considerable length, covering over sixty printed octavo pages. A copy of the bonds secured by the deed is contained in the deed, the bonds having been executed by all of the first parties, each bond being payable to bearer at the Bank of California, N. A., in San Francisco, California. After lengthy recitals, words of conveyance, property schedules, and a *habendum* clause, is found the following:

"BUT IN TRUST NEVERTHELESS for the equal use, benefit and security of each and all and every one of the persons, firms, associations or corporations who are or shall at any time become the holder or holders of any of said bonds or the coupons appertaining thereto for the purpose of securing said bonds and interest when due in accordance with the tenor and effect of said bonds and coupons and to secure the

performance and observance of the covenants, provisions, agreements and conditions of this instrument."

This is followed by a paragraph providing for the release and satisfaction of the trust when the bonds shall have been fully paid. While the bonds, according to their terms, were payable at the above named bank in San Francisco, the deed provided that the first parties might deposit with the trustee cash equal to the entire amount necessary for redemption of the bonds, the deed also providing that the proceeds of sale of timber cut from the mortgaged land should be paid to the trustee as a sinking fund, and eventually applied in *pro tanto* payment of the bonds. At the commencement of that portion of the deed referring to the terms and conditions thereof, is found the following:

"THIS INDENTURE FURTHER WITNESSETH that the terms and conditions upon which the said bonds are to be issued, certified and delivered and the uses and trusts upon which the said Trustee shall hold the said mortgaged premises and the powers which the said Trustee is authorized to exercise in respect to the said property and the covenants and agreements of the parties of the first part concerning the same, are as follows, viz.: . . . ."

Following this preliminary paragraph, there are nine articles, each composed of numerous numbered sections, often subdivided into paragraphs.

Article 1 enumerates special covenants of the first parties, § 3 thereof reading as follows:

"To pay when due the principal sum of One Million Dollars ($1,000,000) and all interest thereon in accordance with the tenor and effect of said bonds and interest coupons thereto attached."

In this article, the first parties agreed with the second party to deposit with the California bank money to meet interest on the bonds and bonds themselves

when due, and to deposit with the second party sums due under the sinking fund provisions of the deed.

Article 7 contains provisions "concerning default, foreclosure and other proceedings." The opening portion of § 3 of this article reads as follows:

"The security hereby constituted shall become enforceable within the meaning of these presents in each and everyone of the events following which are hereby designated as 'Events of Default,' that is to say: . . ."

followed by thirteen numbered paragraphs, in which events of default on the part of first parties are enumerated, the happening of any one of which would authorize the trustee to take some action pursuant to the deed. Following the thirteen numbered paragraphs is found the following:

"It is expressly understood and agreed that time is of the essence of all and singular the provisions hereof upon the part of the parties of the first part to be performed and in case of any such event of default, the Trustee may without notice in its discretion or upon the written request of the holders of twenty-five per cent (25%) in face value of the outstanding bonds secured hereby (and upon being indemnified to its satisfaction) SHALL proceed either to foreclose this Indenture or to bring or take, in its discretion, any action or proceeding in law or equity that in its judgment may be necessary or proper to carry out or enforce the performance of the provisions of this Indenture and to protect the interest of the holders of said bonds."

Section 13, article 7, reads as follows:

"The parties of the first part and each of them hereby consent that in case of any foreclosure or other proceeding deficiency judgment may be rendered jointly and severally against them for any amount which may remain due on said bonds after the application of the proceeds of the sale of the mortgaged premises to the payment thereof as herein provided, it being specifically understood and agreed, however, that nothing in

this Indenture contained shall be construed as a limitation upon the rights of the Trustee to or prevent it from proceeding, in case of default, against any one of the parties of the first part prior to instituting any proceeding for the enforcing of this Indenture. Provided, however, that no action or proceeding shall be brought for the collection of the indebtedness secured hereby or any part thereof outside the jurisdiction of the Province of British Columbia against the parties of the first part or any one of them other than the Company, until after default herein and until at least thirty (30) days after written notice of intention to institute such action or proceeding has been given to said parties of the first part other than the Company."

Section 15 provides in part that:

"No remedy herein conferred upon or reserved to the Trustee or to the holders of bonds hereby secured is intended to be exclusive of any other remedy herein provided but shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute . . ."

Article 8 concerns the trustee, contains its acceptance of the trust upon conditions set forth, the first providing for compensation to the trustee and reimbursement for its expenses. Section 18 of this article reads in part as follows:

"No holder of any bond or coupon secured hereby shall have the right to institute any suit, action or proceeding at law or in equity for the enforcing or foreclosure of this Indenture or for the execution of any trust or power hereof or for the appointment of a receiver or for any other remedy under or upon this Indenture, unless such holder previously shall have given to the Trustee written notice of an event of default; and unless the holders of twenty-five per cent (25%) in amount of bonds hereby secured then outstanding shall have made written request upon the Trustee, and shall have afforded to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted,

or to institute such action, suit or proceeding in its own name," etc.

By paragraph numbered 13, § 3, of article 7, above referred to, it was provided that, if the corporation should "stop payment," or without the trustee's assent cease to carry on its business, the trustee might, without notice, declare the principal of all outstanding bonds due and payable.

The powers of a trustee under such an agreement as that with which we are here concerned are, of course, to be determined from the provisions of the trust agreement. In 2 Perry on Trusts and Trustees (7th ed.), 1027, § 602g, the rule is stated as follows:

"The powers of trustees under deeds of trust, and of mortgagees under mortgages with power of sale, depend entirely upon the terms of the deeds. Such powers are created by, and exist in the deeds, and of course they exist in the terms in which they are created, and in no others. They are to be exercised by the trustees *in pais*. They are wholly matters of convention and contract between the parties, and not of law or jurisdiction. They can be exercised because they are conferred by one party upon another, and not because the law or the courts have conferred or authorized them. Statutes in some of the States have regulated their execution, but such statutes do not create the powers themselves."

The sole question to be determined on this appeal is whether or not, by the trust agreement, the trustee was vested with power to present the contingent claims which it did present in the Wood estates.

As stated in 2 Jones on Bonds and Bond Securities (4th ed.), 473, § 1032,

"It is undoubtedly true that in most phases of a trust transaction, in the securing of corporate bonds, the trustee represents the bondholders, certainly in those particulars in which the trust is to be executed and enforced. The agency, however, does not go beyond the

limits of the authority conferred by the trust indenture, and it can not run counter to the expressed intent of that instrument so as to permit the trustee to be the representative of the bondholders for the purpose of changing or abandoning any of its provisions."

 The right to present such a contingent claim in such a situation as that now before us, was upheld by this court in the case of *Andrews v. Kelleher,* 124 Wash. 517, 214 Pac. 1056. In the case cited, a question very similar to that presented in the case at bar was decided by this court sitting *En Banc.* E. W. Andrews was the owner of a large block of stock in Riverside Timber Company, a corporation. The corporation issued bonds in a large amount, secured by a mortgage on real estate, to Detroit Trust Company, as trustee. Mr. Andrews and other stockholders guaranteed payment of the bonds, which were payable at the trustee's office. Mr. Andrews died soon after the execution of the bonds and the mortgage, and in due time his will was admitted to probate by the superior court for King county. The Detroit Trust Company seasonably presented to the executor its contingent claim for the amount to become due upon the indebtedness evidenced by the bonds and the mortgage, none of the bonds being then due, the claim being based upon Mr. Andrews' guarantee of the bonds. The executor in due time allowed the claim. Later, in an action by Mr. Andrews' widow, it was contended, *inter alia,* that the trust company had no right to present any such claim. The superior court decided the action in favor of the defendant executor and other defendants, and Mrs. Andrews appealed to this court. It was held that the trustee had the right to present the claim, and that the executor properly allowed the same as a contingent claim against the estate. After disposing of several questions not here pertinent, this court said:

"It is further contended with reference to the claim of the Detroit Trust Company that it was not presented by the proper party, in view of the fact that it does not show upon its face that the Detroit Trust Company was then the owner of the bonds which form the basis of the claim, and since it appears in the record that the bonds were in fact held by numerous other persons. It is not seriously contended, and indeed we think there is no room therefor, that the Detroit Trust Company, by the terms of the bonds and the trust mortgage given to it to secure them, would not be the proper party to prosecute a suit foreclosing the mortgage looking to the payment of the bonds from the proceeds of such foreclosure. But the argument is that the trust company is not authorized by the terms of the mortgage or the bonds to institute a suit or proceeding, or to take any steps looking to the enforcement of any personal liability evidenced by the bonds, against either the Riverside Timber Company, the principal debtor, the guarantors or their estates. This, to our mind, presents only a question of agency authority on the part of the Detroit Trust Company acting for and on behalf of the bondholders, to be determined in the light of its trust duties or authority. In the body of the bonds there is reference to the Detroit Trust Company as the trustee and to its duties and authority as such trustee, as specified in the mortgage, in this language:

" 'To which mortgage or deed of trust reference is hereby made for a description of the property, the nature and extent of the security, the rights of the holders of the bonds under the same and the terms and conditions under which the bonds are issued and secured.'

"We also note that both the principal and the interest of the bonds are payable at the office of the Detroit Trust Company. In the body of the mortgage there are many references to the duties and authority of the trust company, suggesting the thought that the Detroit Trust Company is authorized to act for the bondholders, not only in the ultimate foreclosure of the mortgage, should that become necessary, but also for

them in the securing of their rights by enforcing the personal obligation of the Riverside Timber Company, the principal debtor, and the guarantors or their estates. It is sufficient, we think, for present purposes to quote one clause from the mortgage showing such duty or authority on the part of the Detroit Trust Company, which is, 'The trustee . . . may institute foreclosure proceedings or take other legal action to collect the amount of such bonds and coupons with interest.' Without deciding as to whether or not the Detroit Trust Company was, in strict legal duty, bound to present this contingent claim to the executor of the estate of Mr. Andrews, or as to what liability it might incur to the bondholders for failure to do so, we may say that we are, in any event, of the opinion that the Detroit Trust Company was fully authorized to present such claim as it did, and that by doing so, and by its allowance by the executor, there became thereby established a valid, contingent claim against the estate in favor of the Detroit Trust Company, as trustee for the benefit of the bondholders, to the same extent as a proper, timely verification and presentation of a past due, liquidated claim could be so established."

In the above quotation from the *Andrews* case, attention was called to certain important provisions of the trust agreement, and the court noted that both principal and interest of the bonds were payable at the office of the trustee. The court also quoted from the indenture the provision giving the trustee authority to " 'institute foreclosure proceedings or take other legal action to collect the amount of such bonds and coupons with interest.' " Appellants contend that the *Andrews* case is not controlling here, calling our attention to the above mentioned provisions of the trust agreement, as well as to other differences between the agreement there in question and the trust deed now before us.

The fact that, in the *Andrews* case, the bonds were payable at the office of the trustee, while in the case

at bar the bonds were payable at a California bank, is not important. In the *Andrews* case, the bonds were not payable to the trustee, but simply payable at its office. In the case at bar, payments to be made on account of the sinking fund provided for in the deed were to be made directly to the trustee. In any event, the mere place of payment of the bonds is of little moment.

The provision in the trust agreement in the *Andrews* case, conferring upon the trustee the right not only to institute foreclosure proceedings, but to take other legal action to collect the debt, no such precise language being contained in the trust deed now before us, undoubtedly constitutes a difference between the two contracts. In their brief, appellants' counsel frankly admit that the provision referred to would necessarily include authority to perform acts incidental to collection by suit, such as filing a claim in the estate of a deceased obligor on the bonds.

It is evident that, in deciding the *Andrews* case, this court carefully considered the trust mortgage there in question and all the provisions thereof, the court observing that the instrument contained many references to the duties and authority of the trustee, the document

"... suggesting the thought that the Detroit Trust Company is authorized to act for the bondholders, not only in the ultimate foreclosure of the mortgage, should that become necessary, but also for them in the securing of their rights by enforcing the personal obligation of the Riverside Timber Company, the principal debtor, and the guarantors or their estates."

The court found it necessary, however, to specifically refer only to the two provisions of the contract above mentioned.

Bearing in mind the principle that the powers con-

ferred upon the trustee by the contract are defined by the trust agreement, it nevertheless is necessary to consider the agreement as a whole in determining the extent of the trustee's authority.

In the bonds and trust deed now before us, we note the following: It appears on the face of the bonds that they were secured by the trust deed, both the bonds and the deed being executed by the corporation and by Mr. and Mrs. Wood and Mr. and Mrs. English, individually. The trust deed was made for the use, benefit, and security of each and every bondholder, and to secure the performance of the agreements made by the corporation, and by the individuals. By article 1, § 3, of the deed, *supra,* the corporation and the individuals specially covenanted to and with the trustee to pay, when due, the principal and interest of the bonds. True, they did not agree to pay this amount to the trustee, but they did agree with the trustee that they would pay the bonds. Article 7 of the deed covers the matter of default, "foreclosure and other proceedings." In this article is found the paragraph, above quoted, vesting in the trustee power to proceed either to foreclose the indenture, or to bring, in its discretion, any action or proceeding in law or in equity which might be necessary or proper to carry out or enforce the performance of the provisions of the indenture, and to protect the interest of the holders of the bonds. Appellants argue that this provision confers upon the trustee no authority other than to proceed against or in protection of the security, relying upon the other provisions of the article in support of their argument. Appellant's argument on this portion of the contract would be more persuasive if this section stood alone, which is not the case.

By § 13, of article 7, *supra,* Messrs. Wood and English, and their respective wives, expressly consented to the entry of a deficiency judgment against them in case of

foreclosure, and, in a proviso, referred to the bringing by the trustee of an action for the collection of the indebtedness secured by the trust deed, outside the jurisdiction of the province of British Columbia, no such action to be brought until after default and until the expiration of thirty days after written notice of the trustee's intention to institute such an action. This section in express terms provides for the entry of a deficiency judgment against the obligors on the bonds and contemplates the bringing of an action by the trustee against some or all of the individual obligors, for the purpose of collecting the indebtedness secured by the trust deed.

Apparently, none of the property covered by the trust deed was situated within the state of Washington. Mr. and Mrs. Wood and Mr. and Mrs. English are described in the trust deed as residents of the state of Washington. They, as individuals, expressly agreed to the entry of a deficiency judgment against them. Such a deficiency judgment could be entered only in an action upon an indebtedness which they owed as signers of the bonds. Appellants rely upon that portion of the deed, above quoted, stating the terms and conditions upon which the bonds are to be issued and the uses and trusts upon which respondent should hold the mortgaged premises, etc., arguing that power of the trustee is limited to the trust property. Appellants, however, apparently do not contend that the specific consent of the individual obligors to the entry of a deficiency judgment against them is void as inconsistent with some prevailing portion of the trust deed, simply calling attention to the fact that, in some jurisdictions, the law denies the right to recover a deficiency judgment, and that the trust deed in question was executed within a foreign jurisdiction.

Appellants also argue that, because there might be a

number of possible proceedings respecting the security, such as a suit to recover money paid on account of taxes, which the trustee might desire to bring before proceeding to foreclose the indenture, § 13, of article 7, *supra,* does not refer to an action on the debt, but is limited to such other possible proceedings. It may be assumed that the bringing of such an action is authorized by the paragraph now under discussion, but an action based on the original indebtedness is also contemplated thereby.

As to the proviso forbidding an action for the collection of the indebtedness outside the jurisdiction of British Columbia until after default and the expiration of thirty days after the giving of written notice of the intention to institute such an action, appellants argue that a proviso should not be construed as a grant of power, and that the proceedings referred to in the proviso are only the supposed proceedings hereinabove referred to. Conceding that the proviso here in question should not be construed as a grant of power, it must be considered in connection with the entire section, and we are convinced that the section will bear no such limited construction as appellants contend should be placed thereon.

The individual obligors specifically agreed that a deficiency judgment might be entered against them. The security was not within the state of Washington, the debtors were residents of Washington, and, after expressly consenting to the entry of a deficiency judgment, they, by the proviso, imposed some restriction upon the right to sue them personally on the indebtedness. Consideration of the entire paragraph clearly indicates that the parties contemplated that an action might be brought against them as individuals for the collection of the indebtedness created by the bonds and secured by the trust deed.

We are of the opinion that consideration of the entire instrument, and particularly of the portions herein-above set forth, can lead only to the conclusion that, under the deed, the trustee was not limited to enforcing the contract against the security only, but had the right to institute actions or proceedings against the obligors, based upon the indebtedness, and in which judgment against the individual obligors might be sought. This being true, the trustee was undoubtedly vested with authority to perform acts incidental to, but necessary to the maintenance of, such actions, such as filing the claims which appellants here attack.

Appellants cite many cases, most of them decided by United States district or circuit courts, in which it was held that a trustee occupying a position somewhat similar to that of respondent here had no authority to file a claim as such trustee in a receivership or bankruptcy proceeding. We have examined these authorities and find that several of them are not in point, as differing on the facts from the case at bar. Those which involve receiverships or bankruptcies differ from this case, as such proceedings are not exactly analogous to the probate of an estate. In any event, we shall follow the rule adopted by this court in the case of *Andrews v. Kelleher, supra,* recognizing that that case, because of differences in the trust agreements, is not controlling. The case is, however, extremely persuasive.

Appellants contend that the trustee is not the real party in interest, and that, under Rem. Rev. Stat., § 179 [P. C. § 8255], respondent is not in a position to verify, as claimant, a claim against an estate, the deceased not having been indebted to respondent. This question was not discussed in the *Andrews* case, and we are of the opinion that one occupying the position

of respondent can verify such a claim as that with which we are here concerned.

Appellants argue that, because the bonds are not payable to the trustee, and because the holders of the bonds might themselves have filed the claims in question, it should be held that the trustee has no power to present the claims against the estates. For the reasons above stated, we hold that the trustee, under the trust agreement, is vested with authority to sue those individually liable on the bonds, on the debt created thereby. This being true, we are of the opinion that it follows that the trustee has authority to present the claims here in question, as incidental to, and necessary for, the preservation of such rights of action. No other question is involved in this litigation.

On the main question involved, we cannot agree with appellants' contention that the trust deed limits respondent's powers and authority to proceedings against the security. The trust recital contained in the deed, *supra,* and the paragraph, above quoted, commencing with the words "This indenture further witnesseth," relied upon by appellants in support of their contention, cannot so limit the agreements of the parties hereinabove set forth. Even without § 13, of article 7, *supra,* under the *Andrews* case, it is probable that the trust deed vests respondent with power to present the claims, but that article beyond question vests the trustee with authority to sue the individuals liable on the bonds, on the debt.

Such an instrument as the trust deed here in question should not be subjected to a strained construction to the advantage of the persons establishing the trust. The court, when called upon to consider such a document, should construe it in a reasonable manner, and not so as to defeat its obvious intent.

We are convinced that the trial court properly ruled that respondent has the right to present, in the Wood estates, the claims which it filed, and the order of the trial court approving these claims is accordingly affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.