[No. 20351.   Department One.   August 23, 1927.]

*In the Matter of the Estate of* O. B. WILLIAMS,
*Deceased.*

HANNAH E. WILLIAMS, *Appellant,* v. HOWARD G.
COSGROVE *et al., Respondents.*[1]

[1] HUSBAND AND WIFE (47-1, 56)—COMMUNITY PROPERTY—ACQUISITION BEFORE MARRIAGE—RENTS AND PROFITS OF SEPARATE PROPERTY. Where a husband, operating under a business name, had, during a term of years, so commingled separate and community funds as to defy segregation, the presumption that property acquired after marriage is community property is controlling; but an item which is reasonably and satisfactorily traceable to his separate funds or the gains and profits therefrom, should be credited to his separate estate; the status being fixed at the time of its acquisition.

[2] EVIDENCE (127)—BOOKS OF ACCOUNT—ADMISSIBILITY. Complete books of account, kept in the ordinary course of business covering all dealings of a concern, cannot be objected to as inadmissible by a party who first used them for tracing funds.

[3] APPEAL (457)—REVIEW—HARMLESS ERROR — EXCLUSION OF EVIDENCE. Error cannot be assigned on the exclusion of an isolated statement in income tax returns, where the whole of the returns were admitted.

[4] HUSBAND AND WIFE (47-1, 56)—SEPARATE PROPERTY OF HUSBAND —PRODUCTS OF SEPARATE PROPERTY. Where property was acquired by a married man for $27,560, $11,000 of which was liberty bonds constituting his separate property, the property acquired was, to that extent, his separate estate.

[5] WILLS (86) — RIGHTS OF DEVISEES — ELECTION — PROVISIONS OF WILL AND RIGHT AS HEIR. A widow, by remaining in possession of a residence, devised to her, without protest or objection during the course of administration, does not thereby elect to take under the will, and she is not precluded from raising a question as to the separate or community character of the property, and claiming her community interest.

Cross-appeals from a judgment of the superior court for King county, Hall, J., entered July 12, 1926, upon findings fixing the status of properties of a de-

[1] Reported in 258 Pac. 851.

cedent as community and personal estate. Affirmed on plaintiff's appeal and modified on defendant's appeal.

*Daniel Landon, William H. Pemberton,* and *Roy D. Robinson,* for plaintiff-appellant.

*Cosgrove & Terhune* and *Kerr, McCord & Ivey,* for defendants-appellants.

MITCHELL, J.—O. B. Williams died on May 15, 1924. He was married twice. His first wife died March 8, 1912, leaving no issue. By her will, she gave all of her property to her surviving husband. It was community property and appraised "at not less than $127,997," though manifestly, as the trial court in this case stated, it was of much larger value. That estate was somewhat in debt. The property consisted mostly of a sash and door factory established by Mr. Williams about 1902. From the first, the factory was a profitable business and continued to be such until his death. It was at all times his principal source of income and, whether operated as a corporation or otherwise, as it was at different times, he owned it and carried it on in the name of O. B. Williams Co.

On March 17, 1913, he married Hannah E. Williams who survives him. There was no issue of this marriage. He left a nonintervention will, executed on June 14, 1921, by which he gave to his wife the home place and furniture, $21,000 in cash and two life insurance policies amounting to $4,000 payable to his estate, and while not mentioned in the will, the evidence shows that he provided $25,000 in life insurance payable to her that she has collected, and upon which he paid premiums of approximately $20,000. Further, by his will he gave $30,000 to his son Joseph Lloyd Williams, adopted during decedent's first marriage; to each of two brothers and four sisters he gave $5,000;

to five brothers and two sisters of his first wife he gave $4,000. The will contains a provision with reference to the disposition of certain of his property through the executors as trustees, and names his wife and adopted son as residuary legatees.

His will was admitted, and the persons named therein as executors were appointed as such by the court and qualified. They filed an inventory and appraisement, the latter showing a little less than $300,000. The record shows that the estate was in debt, but it does not show the extent of such indebtedness, nor its character as to whether community or otherwise. The indebtedness of the estate, however, is in no way involved in this action. The widow has in no way contributed any separate property to the estate. The executors took charge of, and have handled, all the property, other than the family residence and furniture, which have been in the possession and use of the widow.

She filed a petition claiming that, at his death, all of the property was community and requested an order decreeing all of it to be community property. Upon the petition, answer of the executors and a reply of the petitioners, a trial was had which resulted in findings, conclusions and decree fixing the status of each of the great number of properties real and personal. The petitioner has appealed and the executors have taken a cross-appeal. We shall further speak of them as petitioner and executors.

Altogether, there are involved some sixteen items of real property, and frequently one of such items consists of a number of separate tracts or parcels. All of it was acquired in his name, some before, and the other after, his last marriage. Some of it was improved before his last marriage, while in other cases improvements were made after marriage, some of them on real

property owned by him at the date of the marriage. There are involved some twenty-two separate articles or groups of personal property, not including the furniture at the residence. It is not practical, of course, to discuss each of the items including improvements in detail. The judgment classifies the property, both real and personal, by declaring certain of it to be the separate property of the decedent, other of it community property, while two items of real property, each consisting of two or more separate tracts, are declared to be, the one, one-fourth separate and three-fourths community, and the other, two-fifths separate and three-fifths community. The property thus declared to be community property, exclusive of the life insurance, is valued in the inventory at approximately $70,000.

[1] The case has its puzzles and intricacies in the application of the rules for the determination or status of the property under our community property law. Some of the fundamental principles stated in *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, are helpful here and settle many of the questions in this case. The business course of the deceased, mentioned in the *Brown* case, was much like the conduct of the decedent in the present case. It was said in the *Brown* case:

"He acquired all of the stock of a corporation then known as the New Olympia Hotel Company, the name of which was afterwards changed to that of Semper-Klale Investment Company, and through this company he bought and sold property, borrowed money, and generally conducted his business during his lifetime."

So in the present case, the deceased operated generally, for the same kind of purposes, through the business name, corporation or trade name, of O. B. Williams Co. The present case has this added feature, however, that Mr. Williams had an active manager for

his business, while he, Mr. Williams, worked at the factory for stated wages as an ordinary employee. He kept an account with the business of O. B. Williams Co. into which his wages, or most of them, were placed, as well, also, certain rent collected for him from separate property and sometimes other moneys that he drew out of the business. It was the mixing of these funds, derived from different sources, and the payment out of those funds, together with any other funds he may have used for the purchase and improvement of property or making improvements on his separate property, that constituted such a commingling of funds as to defy segregation (with one exception to be mentioned on the appeal of the executors) and led the court to find and determine that certain of the property was community property.

The property declared to be his separate property appears, by the evidence, to have belonged to him at the date of his marriage, or, as to that subsequently acquired, it reasonably and satisfactorily appears to have been purchased by funds traceable to his separate business and to which he was entitled in his own separate right under the statute as construed in the *Brown* case and other cases therein cited. Upon a consideration of the evidence, we are satisfied that it preponderates in support of the findings and judgment in all respects, with the one exception heretofore referred to.

[2] One of petitioner's assignments of error raises the question of the admissibility in evidence of the books of O. B. Williams Co. They were what appear to be the complete books of account, kept in the ordinary course of business by that concern, and cover all of its business dealings with Mr. Williams and all others. Upon the trial, they were useful, and used

and proper for the tracing of funds. Counsel for the petitioner, in putting in their proof, first used the same set of books and, in our opinion, have no reasonable complaint to make.

[3] Further error is claimed, because the court did not admit petitioner's offer in evidence of an isolated statement in each of certain income tax returns that had been made by the deceased in his lifetime. The whole of the returns were admitted in evidence and, in each case, the decided effect of the whole return was at variance with the clause or excerpt offered by the petitioner. The assignment is without error.

Further error is assigned in admitting the testimony or statements made by the decedent's attorney to him on the occasion of making out an income tax return. The assignment is unimportant, since the result of the action does not depend upon that testimony.

Two other matters, relating to evidence, are complained of. In our opinion, the assignments are without merit and do not require discussion.

Affirmed on petitioner's appeal.

[4] Upon the appeal of the executors, we are of the opinion that, with one exception, the judgment appealed from is right. The exception is that lot 8, block 30, Yesler and Mackintosh Supplemental plat of Maynard's Plat of the Town of Seattle was adjudged to be community property. This property was bought in 1921 for a consideration of $27,566.02 paid and to be paid as follows: $11,000 in Liberty bonds, assumption of a $12,000 mortgage and $3,765 interest against the property and unpaid taxes on it. The evidence satisfies us very clearly that $11,000 Liberty bonds were paid and that they were the separate property of Mr. Williams. To that extent, this piece of property was the separate property of O. B. Williams. *Finn v. Finn,* 106 Wash. 137, 179 Pac. 103.

[5] The executors contend that, under the pleadings and proof, the petitioner has elected to take under the will and therefore is not in a position to raise the question of the community or separate character of the estate. We find, however, no proof of such an election. True, she has remained in possession of the residence during the course of the administration of the estate, but that has been done without protest or objection.

On the appeal of the executors, the judgment will be modified to the extent hereinbefore suggested as to lot 8, block 30, Yesler and Mackintosh Supplemental Plat of Maynard's Plat of the Town of Seattle.

MACKINTOSH, C. J., MAIN, and FULLERTON, JJ., concur.