[No. 21325. *En Banc.* June 6, 1929.]

ANGIE B. COLLINS *et al., Respondents,* v. ANGIE B. COLLINS *et al., Respondents,* EMMA COLLINS DOWNEY, *Appellant.*[1]

*James B. Howe* and *Farrell, Meier & Meagher,* for appellant.

*Donworth, Todd & Holman* and *Chadwick, McMicken, Ramsey & Rupp,* for respondents.

MAIN, J.—This action was brought to construe the last will and testament of John Collins, deceased. The plaintiffs were the executors and trustees named in the will. The defendants were the beneficiaries. The trial was to the court, without a jury, and resulted in find-

[1] Reported in 278 Pac. 186.

ings of fact, conclusions of law and a judgment construing the will, from which the defendant Emma Collins Downey appeals.

John Collins died April 23, 1903. His last will was executed December 23, 1901, and after his death, was duly admitted to probate. The respondent Angie B. Collins, the widow of the deceased, qualified as one of the executors and trustees under the will, as did also the other persons named therein. The part of the will which is here material is as follows:

"FOURTH. I give devise and bequeath unto my executors, herein also designated as my trustees, and to the survivor or survivors and successor or successors of them, all my property, both real and personal, of every nature, kind and character and wherever situated and including all that I may hereafter acquire in trust nevertheless and only in trust to and for the following uses and purposes and subject to the limitations hereinafter stated, that is to say: . . .

"(b) My said trustees shall hold and retain lots one (1), two (2), three (3) and four (4) (including alley) in block one (1) of C. D. Boren and A. A. Denny's plat of the town (now city) of Seattle, known as the 'Occidental Block,' and lots five (5), six (6), seven (7) and eight (8) in block one hundred and one (101) of Terry's Second Addition to the city of Seattle, on which my home is situated, all in King county, state of Washington, together with all household goods, clothing, furniture, pictures, silverware, glassware, books and all other furnishings and like personal property of every kind in my said home and premises until the twenty-ninth of October, A. D. 1913, the date of which my youngest daughter Catherine Collins will have arrived at the age of eighteen years, during which period my said home together with all said personal property therein shall be maintained as a home for my wife and children to be used by them without any charge being made against them in favor of my estate or at all for such use and occupation.

"(c) I hereby direct that my said trustees shall, as soon after my death as the same can be conveniently

and advantageously done, sell and dispose of all my other real and personal property of every kind and character and wherever situated and convert the same into cash, and from the proceeds derived from such sales and the income of said property up to date of sale, pay all my just debts and pay off and discharge all incumbrances upon my said home and upon said block one (1), C. D. Boren and A. A. Denny's plat of the town (now city) of Seattle, and if any money remains thereafter from said sales and income from said property, to pay the same to my wife Angie B. Collins, and to my children, Emma L. Collins, Edana Sophia Collins, John Francis Collins, Bertran Edward Collins and Catherine Collins in equal shares, one-sixth part thereof to each.'

"(d)  My said trustees shall manage said block one (1) of C. D. Boren and A. A. Denny's plat of the town (now city) of Seattle to the best interests of my estate and collect from the lessees the rents, issues and profits thereof up to the said twenty-ninth day of October, A. D. 1913, and shall apply such rents, issues and profits as follows, to wit:  .  .  .  Third, in maintaining and keeping said block one (1) of C. D. Boren and A. A. Denny's plat of the town (now city) of Seattle and my said home property in good condition and repair.  .  .  .

"FIFTH.  I further expressly direct that when my daughter Catherine Collins shall have arrived at the age of eighteen years, to wit: on the twenty-ninth day of October, 1913, my said trustees shall transfer, convey, pay over and deliver all my estate, both real and personal, of every nature and kind and wherever situated, then remaining in their hands, unto my said wife, Angie B. Collins, and my said children, Emma L. Collins, Edana Sophia Collins, John Francis Collins, Edward Bertran Collins and Catherine Collins in equal shares, to wit: One undivided one-sixth part thereof to each.  .  .  .

"SIXTH.  Should there from any cause be insufficient funds in the hands of my said trustees to enable them to pay and discharge my said just debts and incumbrances and to make the other payments above directed to be made then and only in such case I au-

thorize and empower my said trustees to sell or incumber said block one of C. D. Boren and A. A. Denny's plat of the town (now city) of Seattle as they in their judgment shall consider for the best interests of my estate. . . . ''

The respondent Angie B. Collins and John Collins were married in the year 1877. All the surviving children were the result of this marriage, except the appellant Emma Collins Downey, who was the daughter of the deceased by a former marriage. The property described in the will as the Occidental block, now known as the Seattle Hotel property, was acquired by the deceased partly before his marriage to Angie B. Collins, and partly after the marriage. April 7, 1903, after the execution of the will, Angie B. Collins, by quitclaim deed, conveyed all of her interest in the above-mentioned property to her husband. April 9, 1903, or two days later, John Collins, by warranty deed, conveyed an undivided one-half interest in that property to Angie B. Collins, his wife, in consideration of ten dollars and love and affection. The will provides that the estate shall be closed and distributed October 29, 1913, when the youngest child became of age. This was not done, partly because the distributees could not agree, and probably in part because all the parties thought it unwise to close and distribute the estate and segregate their interests at that time. In 1925, the executors and trustees brought this action for the purpose above stated.

The controversy is between Emma Collins Downey and the respondent Angie B. Collins, the widow. The appellant claims that she is entitled to a one-sixth interest in the property involved, while Mrs. Collins claims one-half of the property in her own right, and that Mrs. Downey is only entitled to a one-sixth interest in the other half. The question is whether Mrs.

Collins was required to elect whether she would take under the will. It was adjudged by the trial court that the will did not evidence an intention on the part of the testator to devise property which he did not own, and that Mrs. Collins was not required to make an election.

If the testator intended by his will to dispose of property which he did not own, but which was the property of Mrs. Collins, then she was put to an election. In this connection, it will be assumed that, if an election was necessary, Mrs. Collins, by qualifying as one of the executors and accepting benefits under the will, made an election to take thereunder, and cannot now assert her community or other individual interest in the property. *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255; *Eckert v. Sound Construction & Eng. Co.,* 73 Wash. 320, 131 Pac. 1121; *In re Parkes' Estate,* 101 Wash. 659, 172 Pac. 908.

If an election were necessary, it must appear from the face of the will, which must evidence an intent on the part of the testator to dispose of property which he did not own. In the devising clause of the will, which is found in paragraph 4 thereof, only general words of description are used. This is also true of the distribution clause of the will, which is found in paragraph 5. In neither of those clauses is there any specific description of the property. The specific description of the properties in controversy is found in the clauses of the will which relate to the management thereof. The words "all my property, both real and personal," and "all my estate, both real and personal," evidence no intention to dispose of anything other than that which belonged to the testator and which the law permits him to dispose of by will. He is presumed to have known the law, and therefore knew that, under our statutes, he could, by will, dispose of only one-half of

the community property in which he was interested. The language of the will referring to specifically described property is directed, as stated, to the retention, care and management thereof, and not to its devise or final disposition. It seems quite reasonable to suppose that a testator, well knowing that his wife, in her own right, as a member of the community or by deed from him, was the owner of an undivided one-half of certain property, might yet refer to that property by name or description, and direct its retention or improvement, believing that his wife would acquiesce in his wishes, and with no thought that, by so doing, she would be put to an election or might by her acts forfeit her already existing interest.

We see no substantial distinction between this case and that of *Herrick v. Miller,* 69 Wash. 456, 125 Pac. 974, where the question was fully considered. In that case, the testator devised ''all my real estate . . . which I shall . . . have power to dispose of by will.'' At first sight, it might seem that reference to the right or power of disposition by will was an important qualification not appearing in the will in this case, but the difference, if any, is more apparent than real. Such words of qualification are implied when not expressed, unless the contrary intent very clearly appears. In the case of *Herrick v. Miller, supra,* after reviewing the authorities, the court quoted from 1 Pomeroy, Equity. Jurisprudence (3rd ed.), § 472, as follows:

'' 'The first and fundamental rule, of which all the others are little more than corollaries, is: In order to create the necessity for an election, there must appear upon the face of the will itself, or of the other instrument of donation, a clear unmistakable intention on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention to dispose of property which in fact belongs to another,

and is not within the donor's power of disposition, must appear from the language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish; if both gifts can, upon any interpretation of which the language is reasonably susceptible, stand together, then an election is unnecessary.' ''

following which, this court said:

"A strong presumption, necessary to overcome in order to require an election on the part of the donee under such circumstances, is that the testator is presumed to intend only to dispose of property over which he has testamentary power of disposition. The authorities hereafter noticed show that this presumption will always prevail unless the testator's intention is clearly expressed or necessarily implied to the contrary by the terms of the will itself. We think there is no dissent from this rule.''

And again in the same case it was said:

"In view of the fact that he is not seized of or entitled to the wife's community property, has no power of disposition thereof during her lifetime, nor any power of testamentary disposition thereof, it seems to us that there is but little room for arguing that this language is even ambiguous as to whose property he assumed to dispose of. Standing alone and applying thereto the rules of construction we have noticed, it seems to us that the language does not express an intention on the part of Dr. Miller to dispose of his wife's community interest.''

With reference to the retention and care of community property, the court further said in the *Miller* case:

"So far we have dealt with the language of the will as though it contained nothing but the language of the

devise made to the executor and executrix in trust for Mrs. Miller's benefit. There are other provisions in the will relating to the management of the property devised in trust, as will be noticed by reference to the provisions of the will above quoted, which may seem to indicate an intention that all of the Ross-shire property should be kept and managed together. Those provisions, however, even if construed as mandatory, go only to the question of the management of the property, and do not affect the question of where the title thereto shall ultimately rest."

The case of *Andrews v. Kelleher,* 124 Wash. 517, 214 Pac. 1056, is not in point here, because the testator there, in his will, expressly claimed the right to dispose of the property in question by saying:

". . . all the property that I now hold is separate property. The same was all acquired by me before marriage or is the natural increase from rents and profits of such investment and property as held before my marriage."

Stronger claim of right to make testamentary disposition could hardly be made. Under every test, the language just quoted justified the requiring of an election, and the court very properly there held that the widow was bound to elect. However, the *Andrews* case, while differing in its facts, makes no departure from the well-considered rule of *Herrick v. Miller.*

Many other authorities are cited in the briefs, some from this court and some from other jurisdictions. These have all been examined and considered, but it seems unnecessary to prolong this opinion by reviewing them herein. It may be said that, after again considering the question, we adhere to the doctrine of *Herrick v. Miller.* It is true that, in some of the other jurisdictions, the courts applied a less liberal rule in favor of the widow in requiring her to make an election than has been adopted by this court. In *Miller v.*

*Herrick,* there were general words of description and a direction as to the management of the property. The same is true here. In *Gibony v. Hutcheson,* 20 Tex. Civ. App. 581, 50 S. W. 648, it was said:

"The provisions in the will that after the death of Elizabeth Gibony the executor, Stephenson, should, if necessary, rent out the farm for the purpose of raising the money to pay the legacies, does not, in our opinion, show any intention to devise the farm as an entirety, so as to put the widow to the election of whether she would accept the life estate in the entire tract, or renounce the will and retain her one-half community interest."

The judgment will be affirmed.

All concur.