[No. 37210.   Department One.   February 18, 1965.]

*In the Matter of the Estate of* J. GALE WEGLEY, *Deceased.* ANN DIEMERT, *as Guardian, et al., Appellants.**

*Reported in 399 P. (2d) 326.

*Horace H. Davis* and *William R. Roetcisoender*, for appellants.

*Patrick M. Steele*, for respondent.

HILL, J.—We have here a conflict posed by the obvious intentions of an Oregon testator, clearly expressed in a holographic will and our community property law.

■ J. Gale Wegley, a resident of Oregon, died in 1947, leaving a holographic will under which his property in Oregon was distributed. Such a will, being valid in the state of his domicile, is effective in this state. RCW 11.12-.020.[1] The will also disposed of certain property in King County, Washington, as follows:

> "Our South Seattle estate, Located between
> Seattle & Kent near Riverton Heights.
> If sold is to be divided equally (after all
> costs are deducted,) between my Wife Gertrude
> Edna Wegley and my Daughter Joanna Colleen
> Wegley. This property may be equally divided
> If it is agreeable my Wife, having first
> choice of her half of this real estate."

This property will hereinafter be referred to as the King County property.

The daughter named in the will died in 1949, leaving as her only heir, so far as her father's estate was concerned, a daughter, Pamela Morris, who is represented by her guardian, Ann Diemert, the appellant here.

In 1961, probate proceedings were commenced in Washington by Gertrude Edna Wegley, the widow, in Pierce County (there also being real property belonging to the estate in that county). She was appointed administratrix with the will annexed. The King County property was appraised at $4,000.

---

[1] " . . . *And provided further*, That a last will and testament, executed without the state, in the mode prescribed by law, either of the place where executed or of the testator's domicile shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state." RCW 11.12.020

In the years intervening between the death of Mr. Wegley and the institution of the probate proceedings in Washington by the widow, there had been two happenings of interest with reference to the King County property.

First: In December of 1950, the King County Treasurer sold a portion of the property for delinquent taxes for 1941 and subsequent years. (Pamela Morris, through her guardian, sought to hold the administratrix liable for this loss to the estate. The trial court found that there was "no showing of any malfeasance or misfeasance on the part of the administratrix with will annexed." We agree. The taxes on this portion of the property had been delinquent for 6 years when the testator died, and there was no showing that the administratrix ever had any knowledge that taxes were delinquent on this portion of the property, or that she knew of the tax sale until 1958.)

Second: August 13, 1954, the widow contracted to sell and convey *as her "separate estate"* to Clarence G. Cook and Darlene Cook all of the King County property for $4,000, with $500 down and monthly payments of $35 a month with interest at 5 per cent per annum. No part of the payments made by the Cooks ever reached Pamela Morris.

We come now to a consideration of certain important happenings subsequent to the commencement of the probate proceedings in 1961.

The Cooks completed their payments in 1962, and the widow executed a quitclaim deed in that year purporting to convey the King County property to them. It then became apparent that the widow had no title to the portion of the property sold for taxes and that the remainder was not her separate property. The Cooks who had taken possession of the premises and made improvements thereon, brought an action for rescission and recovered damages against the widow in the sum of $7,345, which the court found to be the value of the King County property at the time of the rescission.

The interest of the Cooks having been eliminated by the judgment in the rescission action, there remained (exclud-

ing the portion sold for taxes) 73,166 square feet[2] of the King County property to be distributed in the Wegley estate. Before any decree of distribution was entered, the State of Washington condemned the easterly 56,115 square feet of the property, paying $7,257.04 therefor. There then remained that amount of money, plus the westerly 17,051 square feet of the property, which had not been condemned, for distribution. This latter portion was found to have a market value of only $150.

Three possible distributions of this property must be considered:

█ 1. If, what seems to us, the clear intent of the will could be carried out and if the condemnation award can be regarded as the proceeds of a sale, the $7,257.04 would be divided equally ($3,628.52 to each, the widow and the heir of the daughter), and the widow would have her choice "if it is agreeable" to the half of the 17,051 square feet of real property remaining unsold, with the other half of the unsold land going to the heir of the daughter. This distribution is not possible because, under our community property law, a husband cannot dispose by will of his wife's half of the community property. *In re Coffey's Estate* (1938), 195 Wash. 379, 81 P. (2d) 283; *Collins v. Collins* (1929), 152 Wash. 499, 278 Pac. 186; RCW 26.16.030.

2. By the application of our community property law to the distribution of the property in question, and then

---

[2] It may assist, in following the discussion, to have in mind the segments into which this property was divided for the purposes of distribution.

The 73,166 square feet was divided into two segments: The easterly 56,115 square feet which had been condemned and for which there was an award of $7,257.04; and the westerly 17,051 square feet which had not been condemned (value $150).

The decree of distribution makes reference to three divisions (on a basis explained later in the opinion):

1. East half (36,583 suare feet) all condemned; proportionate share of condemnation award $4,731.07.

2. Portion of west half condemned (19,532 square feet); proportionate share of condemnation award $2,525.97.

3. Portion of west half not condemned (17,051 square feet); value $150.

the provisions of the will to the testator's community half interest, we would have the following result: As her community property, the widow was entitled to half of the proceeds of the condemnation, *i.e.*, $3,628.52, and an undivided half interest in the 17,051 square feet of real property not condemned.

Applying the will to Mr. Wegley's half of the community property, which he could dispose of by will, *i.e.*, $3,628.52 of the condemnation award and an undivided half interest in 17,051 square feet of the real property not condemned, the widow would, by virtue of his will, get half thereof, to-wit: $1,814.26 of the condemnation award and another undivided one-fourth interest in the real property not condemned.

The application of our community property law and the will would thus give the widow $5,442.78, or three-fourths of the proceeds of the sale, plus a three-fourth undivided interest in the 17,051 square feet. Pamela Morris would receive the other half of her grandfather's half of the community property, *i.e.*, $1,814.26 of the condemnation award and an undivided fourth interest in the 17,051 square feet not condemned.

3. Finally, we have for consideration the distribution actually made.

The widow relying on the will chose the east half of the land (36,583 square feet), all of which was included in the 56,115 square feet which had been condemned, and this entitled her to its proportion of the condemnation award, *i.e.*, $4,731.07. This, the trial court's order of distribution, here appealed from, gave to her.

The widow, having chosen the east half of the property, was awarded a community half interest in the west half, which, if the will were to govern, would go to Pamela Morris as the heir of Wegley's daughter. The west half (36,583 square feet) of the property consisted of 19,532 square feet which had been condemned (with its proportion of the condemnation award amounting to $2,525.97) and the 17,051 square feet of land which had not been condemned. The widow was awarded a community half interest in the

$2,525.97 portion of the condemnation award, *i.e.*, $1,262.99, which was added to the $4,731.07 portion already received and made a total cash distribution to her of $5,994.06 or 82.6 per cent of the total condemnation award. Pamela was awarded $1,262.98 and the 17,051 square feet not condemned (valued at $150).

Such a division cannot be supported on any theory. In the first place, the testator did not intend there to be any right of choice, if the condemnation constituted a sale within the purview of the will; and we hold that it did constitute a sale. See *American Creameries Co. v. Armour & Co.* (1928), 149 Wash. 690, 271 Pac. 896 (cited with approval in *In re Seattle* (1953), 43 Wn. (2d) 445, 261 P. (2d) 416, and *Bethany Presbyterian Church v. Seattle* (1929), 154 Wash. 529, 282 Pac. 922). The testator used the word "sale" in his holographic will as any layman would use it, and it would encompass the exchange of the property for money in a condemnation proceeding.

In the second place, if we assume that we are dealing with land and not cash, the testator had only an undivided half interest in the land upon which his will could operate. We fail to see any room for a choice of halves in an undivided half interest; it is still an undivided interest, no matter how thin it is sliced.

In the third place, if there were a specific piece of land for distribution instead of an undivided half interest therein, the widow had a right of choice of which half she would take only "if it is agreeable." There has been no agreement.

The only attempted justification for such a distribution is a reliance upon RCW 11.76.050 which provides, *inter alia*, that:

". . . The court may, upon such final hearing, partition among the persons entitled thereto, the estate held in common and undivided, and designate and distribute their respective shares; . . ."

and, also, that:

". . .

"The court shall have the authority to make partition, distribution and settlement of all estates in any manner

which to the court seems right and proper, to the end that such estates may be administered and distributed to the persons entitled thereto. . . ."

This does not give the probate court carte blanche in the partition and distribution of estates. The testator's will and the law, not the discretion of the court, determine the "persons entitled thereto." A decree of distribution which does not divide the property in accordance with the law applicable thereto is subject to reversal or modification on appeal. *In re LeRoux's Estate* (1960), 55 Wn. (2d) 889, 350 P. (2d) 1001.

Here, assuming that the probate court was distributing real property and not the proceeds of a sale and assuming further that the will gave the widow the absolute right to choose a half of the property devised by the will (and we do not agree with either assumption), the probate court erred in the decree of distribution it entered. The probate court granted the widow her choice as to one-half of the total property,[3] when all she could choose under the will was one-half of the testator's community interest since both spouses have an equal interest in the community property. *In re Towey's Estate* (1948), 22 Wn. (2d) 212, 155 P. (2d) 273. The choice of a half of an undivided half interest is something of an anomaly.

---

[3] The only theory which would justify giving the widow a choice as to which half of the property she desired, would be if the widow elected to waive her community property rights and take her choice of half the entire property under the will. This would have entitled her to choose the east half and receive the $4,731.07, representing its portion of the condemnation award. She would then have all that the testator intended her to have (assuming there had been no sale of the property), and the rest would have gone to Pamela Morris as the heir of the testator's daughter, *i.e.*, $2,525.97 for the portion of the west half condemned and the 17,051 square feet not condemned. No contention has been made that there was an election by the widow to waive her community interest and to take only under the will, and such an election was clearly not in her interest. While we have therefore not considered that contingency, it is the only theory that supports the probate court giving the widow a choice of a half of the entire property, instead of a choice of a half of the only property passing under the will, *i.e.*, the testator's community half interest in the entire property.

The decree of distribution appealed from is set aside, insofar as it relates to the King County property (or the proceeds of the condemnation thereof), with instructions to modify the decree of distribution in accordance with the second mode of distribution which we have outlined.

The appellant, having secured a substantial change in the Decree of Distribution, will recover her costs on this appeal.

ROSELLINI, C. J., WEAVER, OTT, and HAMILTON, JJ., concur.

April 23, 1965. Petition for rehearing denied.

