[No. 991-1.    Division One—Panel 2.    February 28, 1972.]

*In the Matter of the Estate of* JOHN GEORGE PATTON, *Deceased.*

RONALD G. PATTON *et al., Appellants,* v. MILDRED PATTON, *Respondent.*

*Perkins, Coie, Stone, Olsen & Williams* and *Theodore J. Collins,* for appellants.

*Edwards E. Merges* and *Robert H. Larson,* for respondent.

SWANSON, J.—Does Washington community property law prohibit a husband from devising the whole interest in any specific item of community property, notwithstanding that by the terms of his will his surviving spouse receives one-half or more of the community estate when it is considered in the aggregate? That is the primary question presented in this appeal. We answer it in the affirmative.

The respondent Mildred Patton and John George Patton were married January 6, 1937, in Vancouver, B.C., and remained husband and wife until the death of John George Patton on February 26, 1969. No children were born to this marriage. Appellants Ronald G. Patton and Eileen Patton Clark, children of the decedent by a previous marriage, appeal from the trial court's decision construing a disputed

provision in their father's will and determining the validity of a gift of certain stock certificates adversely to them and in favor of respondent Mildred Patton.[1] This appeal followed.

The dispute over the proper construction to be given the decedent's will centers upon the meaning of clauses 3 and 4 which provide as follows:

[3]

I give, devise and bequeath all items of property which bear both my name and my wife's name, MILDRED M. PATTON, such as stock certificates, Government bonds, bank accounts, savings certificates, insurance policies, retirement fund proceeds, real estate contracts, interest in the family home, to my wife, MILDRED M. PATTON, provided that she survives me by a period of four months. In the event that my wife predeceases me, or dies in the same accident or other calamity that shall cause my death, or fails to survive me by a period of four months, I then give, devise and bequeath my entire estate, without exception to my children, RONALD G. PATTON and EILEEN PATTON CLARK, share and share alike.

[4]

I give, devise and bequeath *all other property* to my children, RONALD G. PATTON and EILEEN PATTON CLARK, per stripes [*sic*] and not per capita, share and share alike.

(Italics ours.) The essential point of contention is the meaning to be assigned to the phrase "all other property" in clause 4. The trial court carefully analyzed this language in connection with the presumption that any testator intends to limit his disposition to his own property, and held that this phrase was intended to include only the deceased husband's one-half community property share of "all other property" and that, accordingly, Mildred Patton is entitled to her one-half community property share in "all other

---

[1] An earlier hearing had resulted in an oral decision in favor of appellants. Following the grant of respondent's petition to reopen the proceedings for introduction of further testimony and evidence, a second hearing was held before a different judge who rendered his decision in favor of respondent.

property" *in addition* to the property she is entitled to receive pursuant to clause 3. Appellants Ronald Patton and Eileen Patton Clark contend that the presumption relied upon by the trial court is rebutted, and argue that the intent expressed in the will is to dispose of all community property assets and that the phrase "all other property" refers to the *whole interest* in all community property assets not disposed of in clause 3.[2]

In the construction of a will the fundamental rule is that the intent of the testator is paramount and is to be determined from the four corners of the will when read as a whole. *In re Estate of Hamilton,* 73 Wn.2d 865, 441 P.2d 768 (1968); *In re Estate of Douglas,* 65 Wn.2d 495, 398 P.2d 7 (1965); *In re Estate of Seaton,* 4 Wn. App. 380, 481 P.2d 567 (1971). See RCW 11.12.230. The intention of the testator is to be determined, if possible, from the terms of the will itself, although in determining the meaning of language employed by the testator in his will to accomplish that intent, the court may consider extrinsic evidence of the facts and circumstances surrounding the writing of the will. *In re Estate of Price,* 75 Wn.2d 884, 454 P.2d 411 (1969); *In re Estate of Lidston,* 32 Wn.2d 408, 202 P.2d 259 (1949); *Old Nat'l Bank v. Damon,* 3 Wn. App. 721, 477 P.2d 29 (1970). This latter proposition was well stated by the court in *In re Estate of Lidston, supra* at 418:

In determining the meaning to be given to the language used in a will, extrinsic evidence of the surrounding facts and circumstances may be considered by the court, not for the purpose of proving intention as an independent fact, or of importing into the will an inten-

[2]In the instant case there has been a partial distribution consistent with the decedent's will—that is, property specifically described in clause 3 of the will valued at $72,343.88 was distributed to Mildred Patton. Certain additional property in the joint names of decedent and Mildred Patton with an appraised value of $28,749.32 is not in dispute but has not yet been distributed. The undisputed property is "all other property," *i.e.,* community assets not held jointly in the names of the decedent and his respondent wife. The trial court found that this property which includes the attempted gifts of Safeway stock to appellants has a total value of $53,447.91.

tion not expressed therein, but rather as an aid to a right understanding of the language used and for the purpose of enabling the court to discern what the testator meant by such language. [Citations omitted.]

Words used in a will are to be understood in their ordinary sense if there is nothing to indicate a contrary intent. *In re Estate of Price, supra; In re Estate of Levas,* 33 Wn.2d 530, 206 P.2d 482 (1949). Nevertheless, if there is an ambiguity in the language of a will, the court is justified in applying reasonable rules of construction, including ejusdem generis, to determine the testator's intent with respect to the ambiguous provision. *In re Estate of Weissenborn,* 1 Wn. App. 844, 466 P.2d 536 (1970). The testator's intention is to be determined as of the date of execution of the will. *In re Estate of Hamilton,* 73 Wn.2d 865, 441 P.2d 768 (1968).

In order for this court to determine the intent of John George Patton as testator in the instant case, it is necessary to consider the provisions of his will previously set forth herein in the light of the foregoing principles. When clause 3 is considered, it is striking that the testator thereby purported to devise "all *items* of property which bear both my name and my wife's name" (Italics ours.) to his wife, the respondent Mildred Patton. The testator then listed certain specific items of property, *i.e.,* "stock certificates, Government bonds, bank accounts," etc. Considering only the provisions of the will itself and giving the words used therein their ordinary meaning, it is apparent that the testator purported to devise to his wife the *whole interest* in the specified items, namely, those items in his and his wife's names jointly. In this regard, it is significant that he did not provide in his will that he was devising *his* property which happened to also be held in his wife's name; rather, he referred to "property" in the general sense, meaning that he purported to devise the whole interest therein to his wife, notwithstanding any interest which his wife already might have had in such property.

In clause 4, having previously devised specific items of property to his wife in clause 3, the testator purports to

devise "all other property" to his children, the appellants Ronald G. Patton and Eileen Patton Clark. That there is an ambiguity in the phrase "all other property" when considered in the context of the entire will appears undeniable, and it is notable that it was interpreted differently by two judges prior to this appeal, and it constitutes the core of the present controversy. Consequently, the will may properly be termed "ambiguous," which simply means that it is capable of being understood in more than one sense, and under such circumstances we are justified in employing reasonable rules of construction to determine the testator's intent. *In re Estate of Torando*, 38 Wn.2d 642, 228 P.2d 142, 236 P.2d 552 (1951); *In re Estate of Weissenborn, supra.*

█ Under the rule of construction provided by the maxim of ejusdem generis, namely, that a general description of things which is in the same context as a specific enumeration of certain items will be limited to refer only to things of the same kind enumerated, it is apparent that the general reference to "all other property" in clause 4 should be considered to refer to the same kind of property enumerated in clause 3. In other words, "all other property" is to be construed to refer to the *whole* interest in specific items of property because that was the *kind* of "property" referred to in clause 3. The only distinguishing feature of the property devised in clause 3 from that devised in clause 4 is the fact that it was held jointly in the names of the testator and his wife. It therefore appears that the testator had in mind an estate plan which called for the devise to his wife of the whole interest in community property held in both his and her names, and the devise to his children of the whole interest in "all other property" held in his name alone or otherwise held without the joinder of his wife's name.

Our understanding that such was the nature of the testator's intent is aided further by a consideration of the facts and circumstances surrounding the writing of the will. *In re Estate of Lidston, supra.* Every item of property held in the names of the testator and his wife jointly was men-

tioned by the testator in clause 3, and all such items, with the sole exception of "insurance policies" were found in the inventory of his estate. In addition, prior to writing his will, the testator put certain certificates for shares of stock in Safeway Stores, Inc., jointly in his name and the names of each of his children, respectively.[3] Certain additional stock certificates remained either in his name alone or were held jointly by him with his wife. He wrote a letter of intent dated June 13, 1967, purporting to satisfy a mortgage loan in the amount of $21,000 to Ronald Patton, with the proviso that the loan be repaid by Ronald until the testator's death, after which the unpaid balance was to be shared equally between Ronald and Eileen, with Ronald to make payments to his sister until her half was paid in full.[4] Significantly, in April of 1969, the testator placed a major asset, a lessor's interest in a fire engine contract valued at more than $21,000, in his name alone, although an earlier investment in a fire engine contract had been held jointly by him with his wife. After completing all the foregoing transactions, each of which is indicative that he was accustomed to dealing with whole interests in community property and was fully aware which assets were held jointly with his wife, the testator, on November 19, 1968, signed the will which is the subject of this appeal.

■ Having considered the terms of the will as a whole, as well as extrinsic evidence of the surrounding facts and circumstances, we hold that it was the intent of the testator to devise to his wife, the respondent, the whole interest in community property held jointly by him with her, and to devise to the children, the appellants, the whole interest in all other community property. In reaching this conclusion,

---

[3]These shares of Safeway stock are the subject of the disputed gift by the testator to his children. This issue is resolved elsewhere in this opinion.

[4]The trial court held that the gift of the mortgage loan constituted an invalid testamentary disposition. No appeal is taken from that ruling. In any event, the mortgage loan is not in the joint names of the testator and his wife, which would be consistent with his attempt to give the proceeds thereof to his children.

we are mindful of the presumption that a testator must be presumed to have known the law and that he can dispose of only his half of the community property, so that such disposition must relate to his own property only. *Collins v. Collins,* 152 Wash. 499, 278 P. 186 (1929). But such presumption[5] is rebutted by our interpretation of the will and the undisputed evidence. Having so held as to the intent of the testator, such intent must be carried out if it is lawful. *Holmes v. Holmes,* 65 Wn.2d 230, 396 P.2d 633 (1964); *In re Estate of Lidston, supra.* In the instant case it is necessary to decide whether the testator's intent may be carried out under the community property law of this state.

It is well settled that neither spouse has testamentary power over more than his or her half of the community property. *In re Estate of Wegley,* 65 Wn.2d 689, 399 P.2d 326 (1965); *Stafford v. Stafford,* 10 Wn.2d 649, 117 P.2d 753 (1941); *Collins v. Collins, supra.* See RCW 11.02.070; RCW 26.16.030. It is also clear that each spouse has an undivided one-half interest in the community property. *In re Estate of Towey,* 22 Wn.2d 212, 155 P.2d 273 (1945); *In re Estate of Coffey,* 195 Wash. 379, 81 P.2d 283 (1938). The concept is well stated in *In re Estate of Towey, supra* at 214:

All community property, both real and personal, is

---

[5]The validity of the oft-repeated presumption that the testator is presumed to have known the law and that he could dispose of only one-half of the community property is open to question in the context of the facts of this case and in view of the uncertainty in the law with regard to "aggregate" versus "item" theory of testamentary disposition. If the aggregate theory were to be adopted (which it is not) the testator's disposition of community property in this case would be consistent with the presumed intention of the testator to limit his disposition to his own property—that this, by his plan the surviving wife was given her half of the community property when considered in the aggregate, plus a substantial portion of his half of the community estate. The uncertainty in the law the testator is presumed to know is highlighted by the apparent difficulty encountered by the United States Supreme Court in *Yiatchos v. Yiatchos,* 376 U.S. 306, 11 L. Ed. 2d 724, 84 S. Ct. 742 (1964), in determining whether such a testamentary disposition is valid. It would therefore appear that testator Patton ought not by presumption be held to a higher standard as to knowledge of the law than the United States Supreme Court.

owned by both spouses equally. *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152. While the husband is a statutory agent for the community, there is an absolute equality of ownership and rights in all community property, there being no distinction whatever so far as concerns the equal property interests of husband and wife. *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634.

What has never been made explicit, however, is whether under our community property law the equal interests of husband and wife in the community property must always be manifested as a collection of undivided half interests in each specific *item* of community property, or whether it is sufficient to protect the equal interests of the spouses if each is guaranteed at least an undivided one-half interest in the community property when viewed in the *aggregate*. *In re Estate of Yiatchos,* 60 Wn.2d 179, 373 P.2d 125 (1962); *Yiatchos v. Yiatchos,* 376 U.S. 306, 11 L. Ed. 2d 724, 84 S. Ct. 742 (1964).

In the *Yiatchos* litigation, a husband used community funds to purchase federal savings bonds payable to him alone or, after his death, payable exclusively to his brother. Our state Supreme Court held that the fact the bonds were payable on death not to the wife, but to a third party alone, constituted a fraud on the community property rights of the wife as a unilateral attempt to convert community property into separate property, and was therefore void *ab initio*. The court concluded that the wife had a vested one-half interest in the bond proceeds and that the decedent's one-half interest should be distributed according to the terms of his will. *In re Estate of Yiatchos, supra.*

On appeal, the United States Supreme Court said that any fraud on the wife must be measured by federal standards. Although under state law the fraud could be established by showing that community funds were used to purchase bonds payable on death to a third party, the reviewing court held that fraud must be demonstrated on remand by additional proof by the wife that she did not consent or otherwise acquiesce in the purchase of the bonds in the name of the husband's brother. The court also re-

versed the state Supreme Court insofar as it had concluded that the *husband's* half interest in the bonds could not go to the designated beneficiary, the husband's brother. The brother argued that he was also entitled to the other half inasmuch as the bonds represented less than one-half of the entire community estate and therefore the husband was not giving away property belonging to his wife. The court said, *Yiatchos*, 376 U.S. at 310:

> The validity of this contention turns on a question of state law about which we are not entirely clear and which may be resolved upon remand. According to the court below, the widow had a "vested one-half interest" in the bonds, which may mean that under Washington law the wife before and after death has a half interest in each item of the community estate, including the particular bonds involved in this case, and cannot be forced to take cash or something else of equal value upon a division of the community property between herself and those entitled to take her husband's half.

and concluded at page 311:

> On the assumption, then, that the wife is entitled to half of the estate, but not half of each particular item of property, the bonds have not been used as an instrument of fraud; . . .

It is notable that in the dissenting opinion, Justices Clark and Douglas commented upon the same problem in the following language at page 314:

> The opinion of the Court conjectures that it might be the law of Washington that a surviving spouse has a one-half interest in each item of the community estate and that if this be so, then allowing all of the bonds to pass to the designated beneficiary would work an involuntary conversion of the spouse's one-half interest in those bonds. The proposition that a spouse has such an interest in each item is of doubtful validity and there is no Washington authority to support it.

Our research has disclosed no Washington case which explicitly indicates that our state Supreme Court has adopted what may be characterized as either an "aggregate" or an "item" theory of the testamentary disposition of

community property by one of the spouses, nor have counsel in the instant case referred us to such authority, each asserting instead that there is no authority to support the theory favoring his opponent.

Counsel for respondent Mildred Patton relies upon the well-established rule in the case of inter vivos gifts that a husband may not give away substantial community property without the consent or acquiescence of his wife. *Marston v. Rue*, 92 Wash. 129, 159 P. 111 (1916); *Nimey v. Nimey*, 182 Wash. 194, 45 P.2d 949 (1935); *Hanley v. Most*, 9 Wn.2d 429, 115 P.2d 933 (1941). The argument is essentially that inasmuch as Washington has an "item" theory for gifts during life, it must also have an "item" theory for gifts at death through testamentary disposition.

The underlying rationale of our community property system is that a husband and wife are deemed to be equal contributors to the fortunes of marriage, and therefore both husband and wife are entitled to an equal interest in all of the assets acquired during that marriage. Personal property is involved in the case at bar, and the applicable statute is RCW 26.16.030 which provides in part:

> The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof.

Notwithstanding the statutory language that the husband has "a like power of disposition" with reference to community property as he has with reference to his separate property, it has been established that the husband must act for the benefit of the community, at least in an economic sense. *Jarrett v. Arnerich*, 44 Wn.2d 55, 265 P.2d 282 (1954). Consistent with this rule is the corollary rule that a husband cannot make enforceable gifts of community personal property without the consent of the wife. *Marston v. Rue, supra.* If one spouse could make inter vivos gifts of community property without the consent of the other, the whole of the community property would be lessened in violation of

the rights of the nongiving spouse to one-half thereof. In the case of an inter vivos gift, a husband cannot know how large his half is, and, accordingly, since he does not know what he has to give, his gift may not be given effect. On the other hand, as appellants contend, such an objection may not be raised when a husband purports to give away half of the whole community property by *testamentary disposition,* because at the death of the husband the extent of his interest could be determined, with the result that, at least under an "aggregate" theory, his wife's one-half interest would be protected.

The primary concern in the gift cases generally has been couched in terms of depletion of the whole estate and the nongiving spouse's one-half interest therein, and not in terms of the fate of any specific item of the community whole. At the same time, the subject of an inter vivos gift is usually a specific item of community property, with the result that broad language in the case law, declaring void the gift of a specific item, strongly implies an "item" theory of community property. It could be persuasively argued, however, that the inter vivos gift of an item of community property is void because of its effect upon the whole community estate, not because it is an item of that estate.[6]

---

[6]In this context, see the language in *Marston v. Rue, supra* at 131. Further support for the proposition that the primary concern of our community property law is the protection of each spouse's interest in the whole community estate, as distinguished from each item of that estate, may be found in *Parker v. Parker,* 121 Wash. 24, 207 P. 1062 (1922). The court in *Parker* concluded that an inter vivos gift was invalid in the following language at page 28:

Not having the consent of his wife—the record, in fact, disclosing that she would not consent thereto—the rule established in *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111, is applicable and the gift must be held to have been void. *If the testimony had shown that this sum of $2,000* which was attempted to be given by Joseph H. Parker to his sister *could have been deducted from his share of the community property a different situation might be presented.* However, there is no testimony in this case showing what the value of Parker's community interest was, and it being necessary to decide this action upon the facts presented in this record, we cannot supply this deficiency and must hold that the gift was void.

(Italics ours.)

■ The foregoing distinctions notwithstanding, we believe an "item" theory result is compelled, even in a case of testamentary disposition, by what is said in *In re Estate of Wegley*, 65 Wn.2d at 690, wherein the testator, an Oregon resident, devised by a holographic will executed in Oregon, certain real property located in King County, Washington, as follows:

> "Our South Seattle estate, Located between Seattle & Kent near Riverton Heights. If sold is to be divided equally (after all costs are deducted,) between my Wife Gertrude Edna Wegley and my Daughter Joanna Colleen Wegley. This property may be equally divided If it is agreeable my Wife, having first choice of her half of this real estate."

Our state Supreme Court, while recognizing that its holding was contrary to the testator's intent, held that this disposition must be deemed to operate only on the decedent's half of the community property represented by the King County property, "because, under our community property law, a husband cannot dispose by will of his wife's half of the community property." *In re Estate of Wegley, supra* at 692. Accordingly, the property, part of which was represented by the proceeds of a condemnation award, was divided in such a manner that the wife received a three-fourths interest and the daughter a one-fourth interest.

Despite the failure of the court in *Wegley* to explicitly discuss an "item" versus an "aggregate" theory,[7] the cases cited concerning the husband's power of testamentary disposition *(In re Estate of Coffey, supra; Collins v. Collins, supra)* and the court's reasoning indicate to us that the *Wegley* court was following an "item" theory without specifically calling it such.

---

[7] In fairness to the court, it appears that the issue was not directly before it. Moreover, although we believe the language in *Wegley* supports an "item" theory of testamentary disposition, we note that the court necessarily had to speak in terms of a single community asset because the real property in question apparently was the only community property before the court; other property in the decedent's estate was located in Oregon and had been distributed in accordance with the will some 15 years prior to the *Wegley* decision.

We hold that one spouse may not designate whole interests in community property to pass by testamentary disposition to named beneficiaries, and therefore we must reject appellants' contention that such devises of whole interests in community property may be enforced so long as the other spouse's community interest is not impaired—that is, as long as it can be shown that the other spouse is guaranteed at least a one-half interest in the community estate when it is viewed in the aggregate.

Having determined that the testator purported to dispose of more than his share of community property by including the entire community estate in his plan of testamentary disposition, we are faced with the troublesome question of whether the widow must, in such circumstances, elect either to renounce her community property right in each item of property and assent to the will, or to insist upon her community interest and take independently of the will.[8]

The trial court recognized the election problem and stated in its conclusions of law:

> That the surviving spouse is not presented with the necessity of any election to take under the Will or to take her community one-half interest under the facts in this case and [sic] unless the court should hold that he attempted to dispose of the entire community estate.

Conclusion 3.

■ To create the necessity for a widow's election upon the husband's death, there must appear on the face of the husband's will a clear and unmistakable intention to dispose of property which is not in fact his own and which was not within his power of disposition. *Herrick v. Miller,* 69 Wash. 456, 125 P. 974 (1912); *Andrews v. Kelleher,* 124 Wash. 517, 214 P. 1056 (1923); *Collins v. Collins, supra.* It has been determined that it is immaterial whether the testator knew the property he purported to dispose of in his will was not within his power of disposition, or whether he

---

[8]For a discussion of a widow's election as an estate planning device to avoid some of the limitations of an "item" theory and permit unified control of the community estate, see 43 Wash. L. Rev. 455 (1967-68).

erroneously believed it to be, because, in either case, if the intention to dispose of it specifically appears, the necessity for an election exists. *Andrews v. Kelleher, supra. See In re Estate of Cooper*, 32 Wn.2d 444, 202 P.2d 439 (1949).

It is of no consequence that the testator here may have improperly interpreted the law or otherwise erroneously conceived it to permit disposition of whole interests in community assets if such disposition would not violate his wife's interest in the community estate when viewed in the aggregate, because so long as his intention to make such disposition appears, as we have found it does, the necessity for an election exists. The doctrine of election was succinctly described in *Tacoma Sav. & Loan Ass'n v. Nadham*, 14 Wn.2d 576, 596, 128 P.2d 982 (1942):

> The doctrine of "election," as applied to the law of wills, means simply that one who takes under a will must conform to all its provisions, and if he accepts a benefit thereunder he must renounce every right inconsistent therewith. [Citations omitted.]

We conclude that the respondent widow must elect to take either under the will, or independently of it.[9]

Appellants' next assignment of error is directed to the validity of the purported inter vivos gift of Safeway stock to appellants by the decedent who placed the stock in the joint names of himself and appellants Ronald Patton and Eileen Patton Clark, respectively.[10] Appellants specifically

---

[9]Appellants do not argue that respondent has already made an election. For cases holding an election may be inferred from a widow's conduct in accepting benefits of the will, and discussing an estoppel theory, *see Andrews v. Kelleher, supra; Prince v. Prince*, 64 Wash. 552, 117 P. 255 (1911); *In re Estate of Goss*, 73 Wash. 330, 132 P. 409 (1913); *In re Estate of Parkes*, 101 Wash. 659, 172 P. 908 (1918). *See also Herrick v. Miller, supra; In re Estate of Curtis*, 116 Wash. 237, 199 P. 309 (1921); and *In re Estate of Williams*, 145 Wash. 19, 258 P. 851 (1927).

[10]The shares of stock involved here are described in the court's finding 4 as:

188 shares of stock in Safeway Stores, Inc.,—in the names of decedent and Eileen Clark as J/T (Item 7 of Inventory)

190 shares of stock in Safeway Stores, Inc. in the names of decedent and Ronald Patton as J/T (Item 7 of Inventory)

assign error to finding 6 which states partially, in reference to the Safeway stock:

> With reference to the remaining items, Nos. 1 through 7, the said Ronald Patton attempted to exercise no dominion or control over said items during the lifetime of the decedent and that all taxes and expense with reference to said items were paid by the marital community and that no valid gift of any of said items to Ronald Patton, or to any other person or persons whomsoever, occurred.

■ ■ The requirements for a completed gift are as stated in *Oman v. Yates,* 70 Wn.2d 181, 185, 422 P.2d 489 (1967):

> The requirements for a completed gift are (1) a donative intent; (2) delivery of the property must be as perfect as the nature of the property and the circumstances and surroundings will reasonably permit. *In re Gallinger's Estate,* 31 Wn.2d 823, 199 P.2d 575 (1948).

*See Henderson v. Tagg,* 68 Wn.2d 188, 412 P.2d 112 (1966).

The trial court discussed the question of delivery of the Safeway stock in its oral opinion:

> No delivery has ever been made or was ever made by the decedent during this life-time of the certificates and apparently some was sold in his name only, as I gather it. Certainly, as far as those that list the son and daughter as joint owners there was never any delivery of the certificates, and no assumption of dominion or control during the life of the decedent. Here again it would appear that this was an attempt to transfer or make a gift after death and this, of course, must fail in that it would not constitute—my reasoning on the loan would apply also—that it is not a gift causa mortis or it is solely an effort to vest title after death by other than a legal method, that is by will or proper method of devising property.

In *Henderson v. Tagg, supra,* a delivery of Puget Sound Power & Light Co. stock certificates together with the necessary supportive documents to the corporation constituted sufficient delivery to effect a constructive delivery to the donee, notwithstanding the provisions of the Uniform Stock

Transfer Act. The court stated in *Henderson,* 68 Wn.2d at 191:

> The cases are in a state of gallimaufry as to the effect, if any, of the above provisions upon alleged donative transfers of stock. [Citation omitted.] Obviously, a strict reading of the statute would dictate that the prospective donor effectuate some sort of *manual* or physical transfer of possession of the certificates themselves and/or a separate assignment thereof between himself and the donee or the donee's agent.

The court went on to say that this requirement of actual physical delivery was too restrictive and that in effect, while a potential donor of shares of stock is not required to hand over the certificates to his intended donee in order to satisfy the law of gift, he is required to make such delivery as the nature of the thing given and the circumstances under which it is given will permit.

But here, the donor retained possession and control of the stock certificates and made no effort to manually deliver them to his children, and there is no showing that either the circumstances, the nature of the property, or the surroundings would not reasonably permit a more perfect delivery than existed here. The stock was not placed in the hands of a third person, nor was possession retained as bailee for safekeeping only as in *Stringfellow v. Stringfellow,* 53 Wn.2d 639, 335 P.2d 825 (1959). Inasmuch as the donor failed to make such delivery of the Safeway stock as the nature of the stock and as the circumstances would permit, there was no effective delivery, and therefore we conclude there was no completed gift.

Not only was there no effective delivery of the Safeway stock in this case, but also we have determined that the attempted gift must fail because there was no present donative intent at the time of the purported transfer. *Henderson v. Tagg, supra; Proctor v. Forsythe,* 4 Wn. App. 238, 480 P.2d 511 (1971). On the contrary, it appears to us that the donor intended to create a joint tenancy and vest title after death. Such intention is shown by the designation on the

certificates themselves naming the decedent and his respective children as joint tenants. Indeed, the appellants recognize such intention and argue that the certificates ought to pass pursuant to the joint tenancy law. We must also disagree with this latter contention. RCW 64.28.010 states in part:

> Joint tenancy shall be created only by written instrument . . . or from husband and wife, when holding title as community property . . . or to themselves and others, or to one of them and to another or others, . . .

The stock is community property, and RCW 64.28.010 clearly requires a writing from husband *and* wife in order to create a valid joint tenancy in community property. While the evidence is undisputed that the respondent wife knew the Safeway stock was placed in the appellant children's names with her husband's, she indicated at trial that she understood that the arrangement was created for tax reasons. In any event, there is no evidence that the decedent and his wife attempted by any writing to create a valid joint tenancy.[11]

Affirmed in part; reversed in part.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied April 17, 1972.

Review denied by Supreme Court June 7, 1972.

---

[11] Appellants also contend that respondent's challenge to the attempted gift of the Safeway stock is barred by the 3-year statute of limitations contained in RCW 4.16.080. In view of our holding that there was no completed gift either by creation of a joint tenancy or otherwise, this contention is without merit inasmuch as there was never any "taking, detaining, or injuring" of personal property from which the statute of limitations could run.